

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2003

# Gardner v. McGroarty

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-1984

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Gardner v. McGroarty" (2003). *2003 Decisions.* Paper 474.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/474

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1984

JOSEPH GARDNER,
                                        Appellant

v.

THOMAS D. McGROARTY;
ROBERT MOSLEY; PHILIP T. KOVAL;
DONALD A. WITTKOPP; GERALD GOECKEL;
SALLY HEALEY; WILKES-BARRE CITY;
PENNSYLVANIA POWER & LIGHT COMPANY a/k/a PP&L, Inc.;
PENNSYLVANIA GAS AND WATER COMPANY n/k/a PG Energy, Inc.

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 99-cv-01634
(Honorable A. Richard Caputo)

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 27, 2003

Before:  SCIRICA, *Chief Judge**, GREENBERG and GIBSON***, *Circuit Judges*

(Filed: June 9, 2003)

---

*Judge Scirica began his term as Chief Judge on May 4, 2003.

**The Honorable John R. Gibson, United States Circuit Judge for the Eighth Judicial Circuit, sitting by designation.

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Plaintiff, Joseph Gardner, appeals from an order granting defendants summary judgment on his claims under 42 U.S.C. § 1983.[1]  We will affirm.

**I.**

Plaintiff filed this action under 42 U.S.C. § 1983 alleging violations of his substantive and procedural due process rights under the Fourth and Fourteenth Amendments.[2]  Gardner's claims stem from a coordinated inspection of his apartment building, which the Wilkes-Barre city defendants[3] initiated in response to a complaint from

---

[1] The District Court actually disposed of five motions for summary judgment.  It granted three motions for summary judgment by defendants Pennsylvania Power & Light Company, Pennsylvania Gas & Water Company and the Wilkes-Barre city defendants (the Wilkes-Barre mayor and other city officials acting in their official capacities).  The District Court denied Gardner's motions for summary judgment against defendants Pennsylvania Power & Light Company and Pennsylvania Gas & Water Company, and against the Wilkes-Barre city defendants.

[2] 42 U.S.C. § 1983 provides:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected any citizen . . . or other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[3] The Wilkes-Barre city defendants are: (1) Thomas D. McGroarty, Mayor of Wilkes-Barre; (2) Robert Mosely, Building Inspector; (3) Philip T. Koval, Chief Housing Inspector; (4) Donald A. Wittkopp, Fire Inspector; (5) Gerald Goeckel, Director of Bureau of Code Enforcement; (6) Sally Healey, Coordinator of the Neighborhood Impact Team; and (7) the city of Wilkes-Barre. The six individual defendants acted in concert through the "Neighborhood Impact Team," which Mayor McGroarty created in 1996 to provide city

(continued...)

one of his tenants. On October 1, 1997, Wilkes-Barre city defendants Wittkopp, Mosley, Koval, and Healey entered the plaintiff's apartment building through an unlocked door and walked along the building's common hallway to the on-site manager's apartment. Gardner entrusted the keys to the vacant apartments to his on-site manager, who consented to and facilitated the inspection by unlocking the vacant apartments for the city inspectors. The four Wilkes-Barre city defendants also knocked on the doors of the occupied apartments and requested permission to conduct an inspection, which they received. But they did not inspect any portion of Gardner's building without consent from his on-site manager or from the tenant of each occupied unit.

The inspection revealed several violations of the Wilkes-Barre Housing Code, which prompted the Wilkes-Barre city defendants to contact the city's plumbing and heat inspector (who is not a defendant in this case). The plumbing and heat inspector became concerned that the flexible hoses connecting the unvented gas space heaters in the hallways and bedrooms to the building's gas pipe lines created an emergency situation. He contacted defendant Pennsylvania Gas and Water Company ("PG&W"), which independently determined that the building's reliance on unvented gas space heaters as the sole heat source presented a dangerous condition and constituted a direct violation of the Wilkes-Barre Housing Code. *See* WILKES-BARRE, PA., HOUSING CODE art. III, § 7-97(h)(1)(e) (1996) (providing use of space heaters must comply with applicable building and fire

---

[3](...continued)
services in targeted areas of the city and to oversee city housing code enforcement.

prevention codes); INT'L MECHANICAL CODE, § 926.1 (1996) (providing unvented room heater shall not be sole source of comfort heating in dwelling units). Accordingly, PG&W discontinued gas service to Gardner's apartment building. After PG&W turned off the gas, Wilkes-Barre city defendants Mosley, Koval, and Wittkopp posted Gardner's apartment building as unfit for habitation because of "lack of heat." *See* WILKES-BARRE, PA., HOUSING CODE art. III, § 7-97(h) (providing that no person shall occupy dwelling without heat). The Wilkes-Barre city defendants then ordered the removal of the tenants and closed the building indefinitely until the code violations were remedied. The Wilkes-Barre city defendants notified defendant Pennsylvania Power & Light Company ("PP&L") that they had posted Gardner's building as unfit for habitation and requested that the electric power be shut off. PP&L shut off power to Gardner's building as requested.

On October 2, 1997, defendant Goekel sent a letter to Gardner listing the violations discovered during the inspection and apprising him of the city's decision to post his apartment building as unfit for habitation. The notice gave Gardner until October 30, 1997 to repair the code violations and informed him of his right to appeal the city inspectors' decision to the Building Board of Appeals within ten days. *See* WILKES-BARRE, PA., HOUSING CODE art. III, § 7-85 (providing that aggrieved person may file appeal setting forth reasons for contesting order within ten days of receiving written notification of order). Despite the letter from Goekel, Gardner declined to avail himself of the appellate procedure set forth in the Wilkes-Barre Housing Code.

4

Instead, Gardner filed this Section 1983 claim. On appeal, Gardner contends the District Court improperly granted the defendants' motions for summary judgment because: (1) the defendants conducted the search and subsequent seizure of the apartment building without a warrant and without notice to the plaintiff, a hearing, or adjudication in violation of substantive and procedural due process requirements under the Fourth and Fourteenth Amendments; (2) there is a material issue of fact as to the city defendants' adherence to the procedures for declaring a building emergency under local ordinances; and (3) there is a material issue of fact as to whether there was an emergency justifying evacuation and seizure of the building by the Wilkes-Barre defendants under the Wilkes-Barre Housing Code.

## II. Standard of Review

We have appellate jurisdiction under 28 U.S.C. § 1291. Our standard of review is plenary. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir. 1999). A motion for summary judgment is properly granted when the record reveals no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999). We must consider the evidence in a manner favorable to Gardner, and afford him the benefit of reasonable inferences. *Id*.

## III. Procedural Due Process

The Fourteenth Amendment forbids state actors from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. The Wilkes-Barre city defendants are state actors. *See Carver v. Foerster*, 102 F.3d 96, 99 (3d Cir.

5

1996) (recognizing that term "person" in Section 1983 includes local and state officers acting under color of state law). The utility company defendants, however, are not state actors. Gardner alleges that PG&W and PP&L conspired with or were coerced by the Wilkes-Barre city defendants to unlawfully suspend gas and electric service to his apartment building. But the District Court found, and we agree, that nothing in the record supports this allegation.[4] Therefore, we need only examine Gardner's procedural due process claim against the Wilkes-Barre city defendants.

The gravamen of Gardner's claim is that the Wilkes-Barre city defendants' inspection and subsequent posting of his apartment building as unfit for habitation deprived him of a Fourteenth Amendment property right without due process of law. Ordinarily, when a plaintiff alleges that state actors have failed to provide procedural due process, we must determine "whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property'; if protected interests are

---

[4]The District Court observed that a utility company can be liable as a state actor under section 1983 for terminating utility services without adequate advance notice. *See Dawes v. Philadelphia Gas Comm'n*, 421 F. Supp. 806, 817 (1976). But the court also noted that the utility defendants were statutorily authorized to discontinue service without notice in the event of the threat of an emergency. *See* 66 Pa. C.S. § 1503 (providing that no public utility may discontinue service without personally contacting customer at least three days in advance "except when required to prevent or alleviate an emergency"). PG&W discontinued gas service to Gardner's apartment building after independently determining that the gas heaters created an emergency. Similarly, PP&L discontinued electric service after the city defendants posted the apartment building as unfit for habitation. On the basis of these facts, no reasonable juror could conclude that PG&W or PP&L conspired with the Wilkes-Barre city defendants to deprive Gardner of utilities service. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986) (providing that summary judgment is appropriate if no reasonable jury could return a verdict for nonmoving party).

6

implicated, we then must decide what procedures constitute 'due process of law.'" *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569-72 (1972); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

But before a plaintiff may raise a claim for failure to provide procedural due process, he "must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.* (citing *McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995); *Dwyer v. Regan*, 777 F.2d 825, 834-35 (2d Cir. 1985), *modified on other grounds*, 793 F.2d 457 (2d Cir.1986); *Riggins v. Bd. of Regents*, 790 F.2d 707, 711-12 (8th Cir. 1986)). Viewing the facts in a light most favorable to Gardner, we conclude that he did not avail himself of the procedural protections afforded under the Wilkes-Barre Housing Code because he declined to appeal the decision to post his apartment building as unfit for habitation to the Building Board of Appeals. Gardner does not allege, nor does the record demonstrate, that the appellate procedures set forth in the Wilkes-Barre Housing Code were unavailable or inadequate. Therefore, we will affirm the order granting summary judgment on Gardner's procedural due process claims.

## IV. Substantive Due Process Claim

Gardner claims the defendants violated his property rights under the Fourth Amendment when they searched his apartment building without a warrant, posted it as unfit

for habitation, evacuated the tenants, and discontinued utility services.[5] "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., plurality opinion). Under the Fourth Amendment, a "search" occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "Seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property, and a seizure may occur in both civil and criminal contexts. *Id*. at 113.

Although municipal searches of apartment buildings for code violations typically require a warrant, *Camara v. Municipal Court*, 387 U.S. 523, 533 (1967), the defendants "may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). In this case, the Wilkes-Barre city defendants entered the building through unlocked doors, and they obtained permission from Gardner's authorized on-site manager or from Gardner's tenants

---

[5]The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

to search all of the areas within Gardner's apartment building in which he had a recognizable privacy interest. Thus, the search of Gardner's building did not run afoul of the Fourth Amendment.

Even though the record establishes the consensual nature of the Wilkes-Barre city defendants' search of his apartment building, Gardner contends the District Court improperly granted summary judgment to the defendants on his illegal seizure claim. He argues that a material issue of fact remains as to: (1) the city defendants' adherence to the procedures for declaring a building emergency under the local ordinances; and (2) whether an emergency justifying the seizure of his building existed as a matter of law. Preliminarily, we note that seizure of property can violate the Fourth Amendment even if the preceding search was constitutional. *Soldal v. Cook County*, 506 U.S. 56, 68 (1992). But where the seizure occurs after a valid demonstration of consent to the search, the seizure does not violate the owner's privacy or possessory interests. *See id*. at 65-66 (recognizing that seizures following valid consent to search do not result in invasion of personal privacy).

As the District Court noted, the decision to post Gardner's building as unfit for human habitation because of "lack of heat" was consistent with the requirements of the Wilkes-Barre Housing Code. *See* WILKES-BARRE, PA., HOUSING CODE art. III, § 7-97(h) (providing that no person shall occupy dwelling without heat). Therefore, an "emergency" existed as a matter of law, and the emergency justified the seizure of Gardner's apartment building. Where a building is seized because of the danger it poses and adequate recourse

9

is provided to challenge any action taken by the local government, the seizure does not violate the Fourth Amendment. *See Freeman v. City of Dallas*, 242 F.3d 642, 651 (5th Cir. 2001) (recognizing that where evidence of code violations is gathered in means unchallenged by owner and administrative and judicial review of alleged code violations is available seizure does not violate Fourth Amendment); *Samuels v. Meriwether*, 94 F.3d 1163, 1168 (8th Cir. 1996) (noting that "an abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that outweigh governmental interests."). Because the search and seizure of Gardner's apartment building did not violate the Fourth Amendment, there is no substantive due process violation.

## V. Conclusion

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment to the Wilkes-Barre city defendants, PG&W, and PP&L.

TO THE CLERK:

Please file the foregoing opinion.

Anthony J. Scirica
Chief Judge