**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| KEVIN A. BUNDY, | : | No. 2 WAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated 10/19/16 at |
| | : | No. 553 MD 2016 |
| v. | : | |
| | : | |
| JOHN E. WETZEL, SECRETARY, PA | : | |
| DEPARTMENT OF CORRECTIONS, | : | |
| TAMMY FERGUSON, | : | SUBMITTED: May 2, 2018 |
| SUPERINTENDENT, SCI BENNER | : | |
| TOWNSHIP AND FRANK DOUGHERTY, | : | |
| BUSINESS MANAGER, SCI BENNER | : | |
| TOWNSHIP, | : | |
| | : | |
| Appellees | : | |

***OPINION***

**CHIEF JUSTICE SAYLOR**                    **DECIDED: MAY 4, 2018**

This *pro se* direct appeal arises from Appellant's challenge to the deduction of funds from his prisoner account to satisfy financial obligations imposed as part of his criminal sentences. He contends, primarily, that he was constitutionally entitled to pre-deprivation notice and a hearing before such deductions began.

Appellant is an inmate confined at SCI-Benner Township. After exhausting administrative remedies, he initiated the present litigation by filing a complaint in the Centre County Court of Common Pleas,[1] naming as defendants various officials of the

---

[1] Benner Township is located in Centre County.

Pennsylvania Department of Corrections in their official capacity. The primary focus of the complaint concerned the Department's withdrawals from his inmate account to satisfy obligations imposed on him at sentencing.[2] The Department made the deductions pursuant to Section 9728(b)(5) of the Sentencing Code, which states:

> The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation or costs . . .. Any amount deducted shall be transmitted . . . to the probation department of the county or other agent designated by the county commissioners of the county with the approval of the president judge of the county in which the offender was convicted. The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph.

42 Pa.C.S. §9728(b)(5). Withdrawals made per this statutory authorization are known as "Act 84 deductions" because the provision was added to Section 9728 by Act 84 of 1998. *See* Act of June 18, 1998, P.L. 640, No. 84, §4.

According to the allegations in Appellant's complaint,[3] Appellant was subject to financial obligations based on criminal convictions in Jefferson and Clearfield Counties. As a result of the Jefferson County prosecution, he was responsible to pay a total of $1,135; in Clearfield County, the sum was $8,033. Consistent with Act 84 and the Department's policy statement entitled DC-ADM-005 (relating to the collection of inmate debts), to recover these costs the Department began deducting twenty percent of all deposits into Appellant's account, which have solely consisted of monetary gifts from

---

[2] Criminal sentences can include restitution, reparation, fees, costs, fines, and penalties. *See* 42 Pa.C.S. §9728. Such liabilities as imposed on Appellant at sentencing will be referred to here, collectively, as "costs" or "financial obligations."

[3] As Appellant is appealing from an order sustaining preliminary objections in the nature of a demurrer, his well-pleaded factual averments are accepted as true throughout this opinion. *See McNeil v. Jordan*, 586 Pa. 413, 435, 894 A.2d 1260, 1273 (2006). The factual background summarized here is based on those allegations.

friends and relatives. Deductions made as of the complaint's filing have totaled $681.19, and they have only pertained to the Jefferson County matter.

Appellant has no tangible assets and no source of income other than the occasional gifts mentioned above. He needs to use these gifted funds, *inter alia*, to litigate a PCRA petition he previously filed.

At his sentencing hearing in Jefferson County, the common pleas court did not consider his ability to pay the financial obligations imposed, and it did not inform him the Department would be making deductions from his inmate account to satisfy those obligations. That tribunal subsequently rejected Appellant's "Petition to Vacate Fine or Extend Time to Pay Fines, Costs and Restitution" on jurisdictional grounds.

In light of these circumstances, Appellant claimed he was not afforded any pre-deprivation process – as required by *Montanez v. Secretary Pennsylvania Department of Corrections*, 773 F.3d 472 (3d Cir. 2014) – by either the sentencing court or the Department before the first deduction occurred. He thus asserted a violation of his due process rights under the Fourteenth Amendment. Appellant additionally questioned whether the Department could make deductions from monies gifted to him by others, as his criminal sentences were imposed on him personally and not on the individuals making the gifts.

In terms of relief, Appellant sought an injunction preventing further deductions from his account, a declaratory judgment, compensatory damages in the form of a return of all funds already deducted, and the costs of litigation. He additionally couched his request for a return of the deducted funds in terms of an action of replevin. *See generally* Pa.R.C.P. No. 1071 (prescribing that the procedure in actions of replevin is to conform with the rules for civil actions).

Appellees filed a preliminary objection challenging the county court's jurisdiction over the dispute, and another in the nature of a demurrer. The common pleas court agreed it lacked jurisdiction and transferred the matter to the Commonwealth Court because the complaint was filed against Commonwealth officers acting in their official capacity. *See* 42 Pa.C.S. §761(a)(1), (b) (giving the Commonwealth Court exclusive original jurisdiction over actions against Commonwealth officers acting in their official capacity).

In a two-page unsigned filing, the Commonwealth Court sustained Appellees' preliminary objection in the nature of a demurrer and dismissed the complaint. *See Bundy v. Wetzel*, No. 553 M.D. 2016, Memorandum and Order, *slip op.* at 1 (Pa. Cmwlth. Oct. 19, 2016). The court explained that: the Department is statutorily authorized to collect court-ordered costs, *see id.* at 2 (citing 42 Pa.C.S. §9728(b)); an inmate is not entitled to a hearing on his ability to pay, *see id.* (citing *Buck v. Beard*, 583 Pa. 431, 879 A.2d 157 (2005)); and the fact that the funds originated from gifts is of no moment because the General Assembly has not created an exception for gifts made to an inmate's account, *see id.* (citing *Danysh v. Dep't of Corr.*, 845 A.2d 260 (Pa. Cmwlth. 2004)). Also, the court rejected Appellant's due process argument under *Montanez*, reasoning that Appellant was aware of the amounts he owed and had unsuccessfully sought relief from those obligations in the common pleas court. *See id*.

On appeal to this Court, Appellant first challenges the Commonwealth Court's jurisdiction to entertain this matter, stating that replevin actions are governed by the Rules of Civil Procedure. He references the venue rule, which vests venue in the county in which the property to be replevied is located. *See* Pa.R.C.P. No. 1072. Appellant also indicates that the Commonwealth Court referred to his filing as a Petition

for Review, which he construes as implicating appellate principles. *See* Brief of Appellant at 13 (citing Pa.R.A.P. 1513).

As to the latter contention, Appellant initially fails to recognize that Rule 1513 discusses both appellate and original jurisdiction petitions for review before the Commonwealth Court. *See* Pa.R.A.P. 1513(e) (relating to the content of an original-jurisdiction petition for review). More particularly, appellate rule 1502 directs that, insofar as governmental determinations are concerned, certain traditional original-jurisdiction actions, including replevin, are abolished and a petition for review under Chapter 15 of the Rules of Appellate Procedure "shall be the exclusive procedure for judicial review of a determination of a government unit." Pa.R.A.P. 1502. Notably, as well, Appellant filed his action against state-government officers, thereby invoking the Commonwealth Court's original, exclusive jurisdiction. *See* 42 Pa.C.S. §761(a)(1), (b).

Having resolved the jurisdictional question, we turn to the due process issue at the center of this appeal.

Appellant argues he was never made aware of the amount of his financial obligations imposed in the Jefferson County sentence, claiming that neither the sentencing court nor the Department conveyed that information to him or informed him that the latter would deduct funds from his inmate account. These circumstances, Appellant maintains, are inconsistent with the Third Circuit's analysis in *Montanez*, under which the Fourteenth Amendment's Due Process Clause requires notice and an opportunity for the prisoner to object prior to the first deduction. *See Montanez*, 773 F.3d at 486. Appellant also asserts that the deductions from personal gifts violates the legislative intent underlying Act 84. In this regard, he maintains that fines, restitution, and the like, are ordered against the defendant and not his relatives and friends.

Finally, Appellant proceeds to discuss a statutory provision that exempts wages, salaries, and commissions still in the hands of an employer from attachment. *See* 42 Pa.C.S. §8127. He indicates that this provision should extend to Act 84 to make personal gifts immune from deduction. Appellant acknowledges that Act 84 authorizes the Department to develop guidelines for the deductions, *see id.* §9728(b)(5), but he contends that the Department, while retaining discretion, "may not alter the legal rights of this Appellant or the duties of a Sentencing Court." Brief of Appellant at 31.

Our review of an order sustaining preliminary objections in the nature of a demurrer is *de novo* and plenary. *See Sernovitz v. Dershaw*, 633 Pa. 641, 649, 127 A.3d 783, 788 (2015). The overall issue is whether the averments are legally sufficient to state a claim for relief. *See Mazur v. Trinity Area Sch. Dist.*, 599 Pa. 232, 240, 961 A.2d 96, 101 (2008). A demurrer should only be sustained if, on the facts averred, the law says with certainty that no recovery is possible. *See Emp'rs Ins. of Wausau v. PennDOT*, 581 Pa. 381, 388 n.5, 865 A.2d 825, 829 n.5 (2005) (internal quotation marks and citation omitted)). All doubts on that question are resolved in favor of overruling it. *See id.*

Appellant's legislative intent and statutory construction arguments are unavailing. There is no indication in the complaint that the funds Appellant receives from his family and friends are anything other than gifts – that is, "voluntary gratuitous transfer[s] of property . . . where the donor manifests an intent to make such a gift and . . . irrevocably delivers the property to the donee." 38A C.J.S. *Gifts* §1; *see also id.* §3 (explaining that an *inter vivos* gift "is a voluntary transfer of property by the owner to another, without any consideration or compensation as an incentive or motive for the transaction" (citing *Washington Univ. v. Catalona*, 490 F.3d 667, 674 (8th Cir. 2007))). Thus, upon receipt by Appellant, the donated monies belonged to him alone and not to the donor.

Appellant does not point to any aspect of the Sentencing Code suggesting funds belonging to an inmate are exempt from Act 84 deductions by virtue of their having been given to the prisoner as a gift. *See generally Danysh*, 845 A.2d at 263 ("The Legislature has not provided an exception [to Act 84] for gifts placed in an inmate's personal account[.]").

As for Section 8127, that provision by its terms does not apply to gifts, but only to "wages, salaries and commissions . . . while still in the hands of an employer." 42 Pa.C.S. §8127(a). *See generally* 18 Pa.C.S. §5123(b) (providing that when a person gives money to an inmate, the funds are credited to the prisoner's account and expended in accordance with the prison's rules and regulations).

Appellant's argument that the Due Process Clause requires some form of pre-deprivation notice is more compelling, however. Because Appellant retains a property interest in the money in his account, *see Buck*, 583 Pa. at 435, 879 A.2d at 160 (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 421 (3d Cir. 2000)); *cf. Montanez*, 773 F.3d at 483 (suggesting that such property interest is limited because inmates are not entitled to complete control over their accounts and the state has an important interest in collecting costs imposed at sentencing), any dispossession of that interest may only occur in conjunction with "due process of law." U.S. CONST. amend. XIV, §1; *see Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 708, 4 S. Ct. 663, 667 (1884); *Gardner v. McGroarty*, 68 Fed. Appx. 307, 310 (3d Cir. 2003) ("The Fourteenth Amendment forbids state actors from depriving persons of life, liberty or property without due process of law."); *accord Buck*, 583 Pa. at 436, 879 A.2d at 160.

Due process is a flexible concept which "varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 984 (1990). Ascertaining what process is due entails a balancing of three considerations: (1) the private interest

affected by the governmental action; (2) the risk of an erroneous deprivation together with the value of additional or substitute safeguards; and (3) the state interest involved, including the administrative burden the additional or substitute procedural requirements would impose on the state. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976). The central demands of due process are notice and an "opportunity to be heard at a meaningful time and in a meaningful manner." *Commonwealth v. Maldonado*, 576 Pa. 101, 108, 838 A.2d 710, 714 (2003) (quoting *Mathews*, 424 U.S. at 333, 96 S. Ct. at 902); *see also Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 246, 64 S. Ct. 599, 606 (1944) ("The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked.").

In terms of the right to be heard at a meaningful time, the second *Mathews* element reflects that avoiding erroneous deprivations before they occur is an important concern under the Due Process Clause. There is thus a general preference that procedural safeguards apply in the pre-deprivation timeframe. *See Pa. Coal Mining Ass'n v. Ins. Dep't*, 471 Pa. 437, 451, 370 A.2d 685, 692 (1977); *see also Zinermon*, 494 U.S. at 127-28, 110 S. Ct. at 984 (citing cases and explaining that "the [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property" (emphasis in original)). If that is not feasible, such as when the deprivation occurs as a result of a prison-cell search, *see Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194 (1984), or when prison employees accidentally lose an inmate's property, *see Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908 (1981),[4] the availability of a meaningful post-deprivation remedy satisfies due

---

[4] The loss in *Parratt* was due to alleged negligence by prison officials. The Supreme Court later ruled that due process is not implicated by a state employee's negligence. *See Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662 (1986).

process. *See Zinermon*, 494 U.S. at 128, 110 S. Ct. at 984-85 (citing cases). The "controlling inquiry" in this regard is "whether the state is in a position to provide for pre-deprivation process." *Hudson*, 468 U.S. at 534, 104 S. Ct. at 3204.

This Court has not previously addressed the way in which these principles apply to monetary deductions from inmate accounts. In *Montanez*, the Third Circuit pointed out that other jurisdictions require at least some process before the first deduction is made, and that such process need not impose a heavy administrative burden on the prison. *See Montanez*, 773 A.3d at 484 (citing IOWA CODE §904.702 (requiring that inmates be given pre-deprivation notice of the deduction scheme and five days to submit written objections)). In this respect, *Montanez* also referenced *State v. Peacock*, 2003 WL 22952755, at *7 (Ohio Ct. App. 2003), in which the Ohio appellate court ruled that a governing administrative regulation satisfied due process because, under its terms:

> [t]he warden's designee [must provide] notice to the inmate of the debt and its intent to seize money from the inmate's account. The notice must inform the inmate of a right to claim exemptions and the type of exemptions available under [a relevant statutory provision]. Only after the inmate has had an opportunity to assert any exemption or defense, may money be withdrawn from the inmate's account.

Id. at *7 (citations omitted). As for Act 84 deductions, the *Montanez* court held that due process requires the Department to afford pre-deprivation notice of the prisoner's total monetary liability to the Commonwealth, the terms of the Department's policy regarding deductions from prisoner accounts, and some means – even if informal – "for inmates to object to potential errors in the deduction process" before the first deduction occurs (although not before subsequent deductions). *Montanez*, 773 F.3d at 486.

As a general precept, the interests of inmates must always be balanced against the "unique institutional concerns that arise in the prison setting," *Burns v. Pa. Dep't of*

*Corr.*, 642 F.3d 163, 173 (3d Cir. 2011) – such as securing the prison's physical plant, maintaining order, safety, and discipline, and providing for prisoners' rehabilitative needs. *See Soto v. Dickey*, 744 F.2d 1260, 1268-69 (7th Cir. 1984); *Small v. Horn*, 554 Pa. 600, 616, 722 A.2d 664, 672 (1998). Nevertheless, the provision of notice and a meaningful (if informal) means to challenge the amount of the debt, assert an exemption, or otherwise raise an objection to the deduction scheme, seems unlikely to impact upon these institutional goals. Just as important, doing so can potentially avoid erroneous deprivations before they occur, such as: deduction from monies which are exempt (such as veteran's benefits, see *Higgins v. Beyer*, 293 F.3d 683 (3d Cir. 2002), or social security benefits, *see Bennett v. Arkansas*, 485 U.S. 395, 108 S. Ct. 1204 (1988) (*per curiam*)); withdrawals predicated on an erroneous total financial obligation, *see Montanez*, 773 F.3d at 484 (indicating that the restitution amount reflected in the Department's accounting system was $800 higher than the amount of court-ordered restitution); deductions from the wrong account, *cf. Guy v. Carter*, 2014 WL 644321 (E.D. La. Feb. 19, 2014) (involving an allegation that withdrawals were made from an inmate's account to pay another prisoner's medical costs); or deductions which are inconsistent with an installment plan approved by the sentencing court. *See* 42 Pa.C.S. §§9730(b)(3); 9758(b).[5]

---

[5] Appellees object that we should follow *Buck* instead of *Montanez*, since the former represents binding precedent from this Court, whereas the latter is merely instructive. In fact, *Buck* is controlling as to some aspects of the question before us. *Buck* stated that, because Section 9728(b)(5) went into effect before sentencing occurred, the defendant had adequate notice of the Department's authority under Act 84 to deduct funds from his account. The same reasoning applies to Appellant as he too was sentenced after Section 9725(b)(5) became effective. *Buck* additionally established that due process does not require the Department to arrange for a *judicial* ability-to-pay hearing before making deductions. As the Third Circuit recognized, however, *Buck* did not deal with whether any sort of *administrative* pre-deprivation process is constitutionally required before the first deduction is made.

Therefore, we agree with the Third Circuit's holding that, to comply with due process, the Department must, prior to the first deduction: (a) inform the inmate of the total amount of his financial liability as reflected in his sentencing order, as well as the Department's policy concerning the rate at which funds will be deducted from his account and which funds are subject to deduction; and (b) give the inmate a reasonable opportunity to object to the application of the Department's policy to his account. *See Montanez*, 773 F.3d at 486; *see also Higgins*, 293 F.3d at 694. These measures will help protect against errors in the Department's application of its Act 84 deduction policy without significantly impeding its ability to carry out essential functions. As such, they are indicated pursuant to the balancing assessment prescribed by the Supreme Court in *Mathews*.

As applied here, Appellant has alleged he was not given pre-deprivation notice concerning the amount he owed or an opportunity to object.[6] Several of Appellant's averments focus on the alleged impropriety of making deductions from gifts. Others claim an entitlement to an ability-to-pay hearing, which, under prevailing Pennsylvania law as established by the Commonwealth Court, would only be implicated in relation to Act 84 deductions if there has been a "material change of circumstances" – such as a threat of additional confinement or increased conditions of supervision as a result of unpaid financial obligations. *Ingram v. Newman*, 830 A.2d 1099, 1103 (Pa. Cmwlth. 2003); *see also George v. Beard*, 824 A.2d 393, 396 (Pa. Cmwlth. 2003); *Dep't of Corr. v. Tate*, 133 A.3d 350, 356 (Pa. Cmwlth. 2016).

---

[6] Appellees seek to counter this contention by observing that Appellant had become aware of his total financial obligations by the time he filed his complaint. *See* Brief for Appellees at 10. This observation is not directly responsive to Appellant's claim that he did not receive such information in the pre-deprivation timeframe.

We have already rejected the first theory relating to gifted funds. Still, construing Appellant's prison-drawn, *pro se* averments with some leniency, as is our custom, *see Commonwealth v. Eller*, 569 Pa. 622, 634-35, 807 A.2d 838, 845 (2002); *Commonwealth v. Murray*, 481 Pa. 201, 205, 392 A.2d 317, 319 (1978), he has alleged that, due to his indigence, the deductions have adversely affected his ability to litigate his PCRA petition. We find this allegation resonant because the change-in-circumstances prerequisite, as developed by the Commonwealth Court in *George* and *Ingram*, is grounded on the premise that the prisoner can obtain meaningful merits review of the financial aspects of his sentence through direct appeal or post-conviction proceedings. *See George*, 824 A.2d at 396; *Ingram*, 830 A.2d at 1102-03. If (as asserted) that opportunity is substantially encumbered by the Department's Act 84 deductions, an issue arises whether the *George/Ingram* rule should be extended to encompass such a circumstance. It would be premature for us to address that question at the present, demurrer stage of these proceedings because no impediment has yet been found to exist. If factual development bears out Appellant's position in this regard, however, the question will become salient.

Even apart from any concrete harm, if a procedural due process violation is demonstrated, nominal damages may be warranted. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S. Ct. 1042, 1053-54 (1978) (stating that because the right to procedural due process is "absolute" and independent of the merits of a claimant's substantive assertions, its denial is "actionable for nominal damages without proof of actual injury"); *Higgins*, 293 F.3d at 694 n.3. As well, Appellant has asked for declaratory and injunctive relief.

In view of the foregoing, when Appellant's well-pleaded allegations are accepted as true, the law does not say with certainty that no relief is available. Accordingly, the Commonwealth Court should not have sustained Appellees' demurrer.[7]

The order of the Commonwealth Court is reversed and the matter is remanded to that court for further proceedings.

Justices Baer, Todd, Donohue, Dougherty, Wecht and Mundy join this opinion.

---

[7] If Appellant ultimately demonstrates that his constitutional rights were violated, it will be for the Commonwealth Court to decide, in the first instance, what the remedy should be.