# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Glen Wright,       :
                  Petitioner   :
                         :
                         :   No. 94 M.D. 2019
      v.      :   Submitted:  July 12, 2019
                         :
Pennsylvania State Police,     :
                  Respondent   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE ROBERT SIMPSON, Judge[1]
                  HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED:**    **December 12, 2019**

Before us in our original jurisdiction is the Pennsylvania State Police's (PSP) preliminary objection in the nature of a demurrer to Anthony Glen Wright's (Wright) petition for review seeking to enjoin PSP's enforcement of sexual offender registration laws against him. Wright, who was recently released from custody for sexual offenses, argues he is not subject to the Sexual Offender Registration and Notification Act (SORNA),[2] as amended by Act 10[3] and Act 29[4] (collectively, Acts) because their application to him is unconstitutional under Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017), cert. denied, 138 S. Ct. 925 (2018). He claims the Acts

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.

[2] Act of December 20, 2011, P.L. 446, as amended, 42 Pa. C.S. §§9799.10-9799.41.

[3] Act of February 21, 2018, P.L. 27, as amended, 42 Pa. C.S. §§9718.5, 9799.10-9799.75.

[4] Act of June 12, 2018, P.L. 140, 42 Pa. C.S. §§9799.10-9799.75.

impose additional punishment, including three more years of probation and online registration requirements that are shame-inducing and would damage his reputation. PSP argues Wright fails to state a claim, arguing the prior versions of SORNA were constitutional. Upon consideration, we overrule PSP's demurrer, and we direct it to answer the petition for review.

## I. Background

In 2009, Wright was convicted of involuntary deviate sexual intercourse, 18 Pa. C.S. §3123(A)(7), indecent assault, 18 Pa. C.S. §3126(A)(7), and aggravated indecent assault, 18 Pa. C.S. §3125(A)(7), based on offenses committed in 2006. Upon conviction, he was sentenced to 7½ to 20 years' incarceration for his crimes. The law in effect at the time of his conviction was Megan's Law II.[5]

In his petition for review (Petition), representing himself, Wright specifically challenged the application of SORNA, Act 10 and Act 29 to him, and any future sex offender legislation, as unconstitutional under the *ex post facto* clauses of the state and federal constitutions[6] pursuant to Muniz. Pet., ¶¶5, 21. He claims the Acts subject him to enhanced notification and registration requirements. Id., ¶6. In his brief he also asks to stay enforcement of these requirements until a decision is rendered in Commonwealth v. Lacombe (Pa., No. 35 MAP 2018),[7]

---

[5] Former 42 Pa. C.S. §§9791-9799.7, commonly known as Megan's Law II, was held unconstitutional in part by Commonwealth v. Williams, 832 A.2d 962 (Pa. 2003).

[6] PA. CONST. art. I, §17 (No *ex post facto* law … shall be passed"); U.S. CONST. art. I, §1 ("No State shall … pass any … *ex post facto* Law ….").

[7] Like Wright, Lacombe was subject to lifetime registration under SORNA for involuntary deviate sexual intercourse, which was classified as a Tier III offense. See former 42 Pa. C.S. §§9799.14(d)(4), 9799.15(a)(3).

2

pending before our Supreme Court, in which an *ex post facto* challenge to the Acts was upheld.

As to the registration requirement, Wright claims the impairment of his "right to reputation under Article 1, Section 1 of the Pennsylvania Constitution, will continue to be violated in perpetuity if relief is not granted by this [C]ourt." Pet., ¶7. He avers both Acts are punitive because they subject him to another mandatory period of probation "in addition to any other lawful sentence issued by the court." Id., ¶22 (citing Act 10, Section 9718.5(a) of the Sentencing Code). Act 29 states that anyone who was required to register under sex offender laws in effect *prior* to SORNA (for crimes committed before its implementation) shall not be relieved of the registration requirements. He also seeks removal of his name and other identifiers from any websites regarding sex offender registration. In addition, he requests an order that PSP shall be prohibited from enforcing SORNA and later enactments against him. Id., ¶28. At the time he filed his Petition, Wright was granted parole to an approved home plan. Id., ¶6.

PSP filed an admittedly untimely response to the Petition, raising a single preliminary objection to the Petition, a demurrer to claims under SORNA and Act 10. Therein, it admitted that PSP maintains the sex offender registry. Relevant here, the preliminary objections recognize that Wright challenges the application of SORNA and both Acts. PSP asserts "that Act[s] 10 and 29 essentially recreate the conditions that Petitioner was subject to under Megan's Law II." Prelim. Obj., ¶10. PSP maintains that because Megan's Law II registration and notification requirements were constitutional, so are the more recently enacted Acts. PSP avers

3

that under the Acts, Wright is a lifetime registrant required to report in-person once per year, just as was required by Megan's Law II. PSP asserts <u>Muniz</u> only applied to SORNA, and does not preclude registration under the Acts. Prelim. Obj., ¶15.

In his response to PSP's preliminary objection,[8] Wright confirms his release from custody as of April 8, 2019; thus, he is currently subject to the enhanced notification and registration requirements. He denies that he can seek removal from the registry after 25 years. Answer to Prelim. Obj., ¶5. He claims he is not subject to either Act 10 or Act 29 because their application violates the *ex post facto* clauses. Wright maintains the Acts require him to serve an additional three years of probation outside his original sentence, to register quarterly instead of in-person once per year, and to report immediately any change in his identifying information. <u>Id.</u>, ¶10.

Both parties briefed the preliminary objection. In his brief in opposition, Wright asks this Court to strike PSP's brief as nonresponsive because it pertained to another inmate.[9]

---

[8] We decline Wright's request to strike PSP's preliminary objection for untimeliness in his response thereto, <u>see</u> Answer to Prelim. Obj. n.2, as the proper mechanism for such a request is to file preliminary objections to preliminary objections.

[9] Shortly after filing his Petition, Wright filed a motion for summary relief on his claims. Wright filed a second motion for summary relief after PSP filed its demurrer untimely, arguing his Petition was unopposed. This Court denied Wright's motion as moot once PSP filed its preliminary objection, albeit untimely by a few days. As Wright did not identify any prejudice from the delay in filing, and we discern none, we address the preliminary objection despite its untimeliness. Moreover, as Wright did not brief his motion for summary relief or request action on it, we do not consider it.

## II. Discussion

### A. PSP's Brief

Wright asks this Court to strike PSP's brief because it pertains to a different petitioner, Frederick Lewis Bill, Jr. (Bill), who also challenged Act 10 under <u>Muniz</u>. Bill was an admitted sexually violent predator subject to lifetime registration. PSP's brief repeatedly refers to Bill as the petitioner and includes facts pertaining to Bill; a copy of our recent decision in <u>Bill v. Noonan</u> (Pa. Cmwlth., No. 437 M.D. 2017, filed May 16, 2019), 2019 WL 2400676 (unreported), was appended to the brief.

Although certain aspects of procedural and factual history are correct, PSP's brief appears recycled from the brief it filed in <u>Bill v. Noonan</u>. Indeed, the brief refers to the petitioner as "Bill" instead of Wright. <u>See</u> Resp't's Br. at 8 (stating "Petitioner … is … currently confined …" and "<u>Bill</u> has not made parole.") (emphasis added). Also, the brief states petitioner was housed in SCI Mahanoy, when, prior to his release, Wright was housed at SCI Rockview. Pet., ¶1.

In addition, the crimes and laws in effect are not the same. Notably, in error, PSP states that "Petitioner was required to register as a sexual offender for life and was classified as a sexually violent predator, Ex. A, Pet. ¶5." Resp't's Br. at 7. However, there is no indication that Wright was classified as a sexually violent predator. Also, PSP incorrectly states: "Petitioner alleges that he was convicted in <u>2005</u> of one count of involuntary deviate sexual intercourse and one count of <u>rape</u> in the Court of Common Pleas of Berks County." Resp't's Br. at 7 (emphasis added). But Wright was convicted in <u>2009</u>, and rape was not among the charges.

5

In addition to referring to Wright as Bill, and stating facts related to that petitioner, including greater offenses, PSP's brief does not respond to the legal issues Wright raised in his Petition. First, PSP's brief addressed only Act 10 when Wright specifically challenges Act 29. Pet., ¶¶5, 21. Further, Wright claims impairment of his fundamental right to reputation, which PSP does not address.

It is clear PSP's brief pertains to another petitioner who had different charges and classification as a sexually violent predator, and who remains in prison. Those are material distinctions from the case before us. Accordingly, we strike PSP's brief as non-supportive to its preliminary objection. Nevertheless, as we are able to discern the legal issues before us, we address PSP's demurrer on its merit.

## B. Demurrer

Wright alleges the Acts are more punitive because they impose a greater term of probation and additional notification and registration requirements. He also asserts the registration and publication requirements violate his fundamental right to reputation. PSP contends Wright's Petition fails to state a claim.

At this early stage, we accept Wright's well-pled allegations as true. Preliminary objections "are deemed to admit all well-pleaded material facts and any inferences reasonably deduced therefrom ...." Lennitt v. Dep't of Corr., 964 A.2d 37, 40 (Pa. Cmwlth. 2008). This Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. Thomas v. Corbett, 90 A.3d 789 (Pa. Cmwlth. 2014).

6

"A demurrer should only be sustained if, on the facts averred, the law says with certainty that no recovery is possible." Bundy v. Wetzel, 184 A.3d 551, 556 (Pa. 2018). When reviewing preliminary objections in the nature of a demurrer to a petition seeking injunctive relief, we sustain the objection only where the underlying petition is insufficient to establish a right to relief. Vega v. Beard, 847 A.2d 153 (Pa. Cmwlth. 2004). "Any doubt must be resolved in favor of the party seeking the injunction." Id. at 155.

## 1. Muniz & *Ex Post Facto* Clauses

In Muniz, our Supreme Court held SORNA unconstitutional as applied to sex offenders who were convicted under earlier versions of Megan's Law. Thus, it was material when the sex offender committed the offense, and whether the offense would have triggered the same punishment. It reasoned SORNA violated the *ex post facto* clauses as to Muniz because it became effective after the dates of the offense and conviction, and it imposed more onerous registration requirements.

The legislature responded to the Muniz decision by enacting Act 10. Shortly thereafter, the legislature reenacted and amended various provisions of Act 10 through Act 29. In addition to reinstituting a tiered system of classification, Act 29 provides that registration commences upon release from incarceration. Thus, Wright is currently subject to the reporting and registration requirements in Act 29.

PSP contends this case is controlled by our recent decision in Bill v. Noonan, involving the petitioner PSP named in error in its brief. We disagree.

Bill was a sexually violent predator based on his conviction for rape, a more serious offense with more severe punishment. Designation as a sexually violent predator involved additional fact-finding and assessment. See former Section 9799.24(b) of SORNA, former 42 Pa. C.S. §9799.24(b). Thus, Bill was at all times since his classification as a sexually violent predator subject to a lifetime registration requirement. In addition, in contrast to Bill v. Noonan, here, there is no admission by Wright in his Petition that he was classified as a "sexually violent predator." This is a critical distinction from this Court's disposition of that case.

Here, Wright committed the offenses in 2006. Megan's Law II, which expired when SORNA was enacted, was in effect at the time of his 2009 convictions. As such, Wright's convictions pre-date SORNA's enactment in 2011, and the subsequent enactments of the Acts in 2018.

Because the Acts were enacted subsequent to his 2009 convictions, like SORNA, they are prohibited by the *ex post facto* clauses to the extent they impose greater punishment. A law that "changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed" violates the *ex post facto* clause. Commonwealth v. Allshouse, 36 A.3d 163, 184 (Pa. 2012).

Under SORNA, "involuntary deviate sexual intercourse" qualified as a Tier III offense subject to lifetime registration. See former 42 Pa. C.S. §9799.15. The Muniz Court recognized the registration requirements of SORNA, which are reenacted in Act 29, were more restrictive than the prior versions of Megan's Law.

8

Megan's Law II did not include a public notification provision. In declining to strike notification provisions, the Supreme Court noted "most of the [Megan's Law II] notification provisions pertain to neighbors of a sexually violent predator, social service agencies, schools or day care centers," available to the public only upon request. Commonwealth v. Williams, 832 A.2d 962, 980 (Pa. 2003). Yet, 42 Pa. C.S. §9799.63(b) imposes internet and electronic notification requirements, which the Muniz Court equated to public shaming in violation of our Constitution.

As to registration, Megan's Law II required registration and reporting for 10 years, see former 42 Pa. C.S. §9793(a), whereas under the tiered classes in Act 29, Wright is subject to lifetime registration. As to reporting obligations, Megan's Law II allowed an offender 10 days to report changes in registration information, including address, employment status and location, former Section 9795.2(a)(2), whereas the Acts require an offender to report changes in registration information within three (3) days. See 42 Pa. C.S. §9799.56(a)(2).

Act 10 imposes a mandatory probationary sentence of three years. See 42 Pa. C.S. §9718.5(a). Imposing additional years of probation is punitive. Williams.

Applying our Supreme Court's reasoning in Muniz, the frequency of reporting and the online publication requirements weigh in favor of finding the Acts punitive. Moreover, the *ex post facto* protection extended under the Pennsylvania Constitution is greater than that under the U.S. Constitution because it is coupled with the right to reputation. Muniz, 164 A.3d at 1223 (noting "the registration and online publication provisions place a unique burden on the right to reputation").

Because the current law recognizes enhanced notification and registration requirements are punitive, as is the imposition of mandatory probation, Wright states a claim that the Acts may not be applied retroactively to him.  Muniz. Consequently, we overrule PSP's demurrer to Wright's *ex post facto* claims.

### 2. Right to Reputation

Wright also asserts enforcement of the Acts impairs his reputation protected by Article I, Section 1 of the Pennsylvania Constitution.  It provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."  PA. CONST. art. I, §1.

Our Supreme Court held "SORNA's registration requirements, premised upon the presumption that all sexual offenders pose a high risk of recidivating, impinge upon … offenders' fundamental right to reputation as protected under the Pennsylvania Constitution."  In re J.B., 107 A.3d 1, 16-17 (Pa. 2014); see also R. v. Dep't of Pub. Welfare, 636 A.2d 142 (Pa. 1994).  "[R]eputation is among the fundamental rights that cannot be abridged without compliance with state constitutional standards of due process."  Taylor v. Pa. State Police, 132 A.3d 590, 605 (Pa. Cmwlth. 2016) (en banc).

The Muniz Court recognized SORNA's notification and registration provisions implicate the right to reputation.  In particular, it considered the publication provision "viewed in the context of our current internet-based world –

10

to be comparable to shaming punishments." Id. at 1214. Further, in J.B., the Court criticized the presumption of recidivism underlying SORNA, which presumption is now embedded in the legislative findings of the Acts. See 42 Pa. C.S. §9799.11(a)(4) ("Sex offenders pose a high risk of committing additional offenses ….").

Adopting our Supreme Court's approach, we discern merit in Wright's claim that the notification and registration provisions in the Acts are comparable to public shaming. See 42 Pa. C.S. §§9799.10(5), 9799.62, 9799.63 (regarding posting of information on public Internet website and electronic notification provisions). See Lusik v. Pa. State Police (Pa. Cmwlth., No. 405 M.D. 2017, filed Oct. 11, 2019), 2019 WL 5092412 (unreported).[10] Therefore, Wright pleads a cognizable violation of his right to reputation.

Regardless, PSP did not demur to Wright's constitutional claim for damage to his reputation as a result of the reporting and registration requirements. As we discern merit in his claim, PSP is required to respond to it.

---

[10] We cite this case for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

### III. Conclusion[11]

For the foregoing reasons, we overrule PSP's demurrer as Wright's well-pled allegations, if proven, assert potentially valid constitutional claims, and the registration, notification and reporting requirements affect Wright at this time. Accordingly, PSP is directed to file an answer within 30 days.

_____
ROBERT SIMPSON, Judge

---

[11] In his brief, Wright requested we stay PSP's enforcement of the Acts pending disposition of our Supreme Court's decision in Commonwealth v. Lacombe (Pa., No. 35 MAP 2018). However, because Wright did not file a discrete application for relief seeking a stay, which would have afforded PSP full notice and an opportunity to be heard, we decline to stay the matter at this time, without prejudice to Wright filing an appropriate application in the future.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Glen Wright,                        :
                   Petitioner        :
                               :   No. 94 M.D. 2019
             v.                          :
                               :
Pennsylvania State Police,                  :
                  Respondent        :

## O R D E R

**AND NOW**, this 12th day of December 2019, the preliminary objection filed by the Pennsylvania State Police (PSP) is **OVERRULED**, and PSP is **DIRECTED** to file an answer to the petition for review within thirty (30) days.

                                        _____

                                        ROBERT SIMPSON, Judge