IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aquil Johnson,                                :
                        Petitioner             :
                                               :
            v.                                 :
                                               :
John Wetzel, Secretary PA. D.O.C.,             :
Mark Garman, Super., S.C.I.                    :
Rockview et al., Officers, Agents,             :
Servants, Employees and Attorneys,            :   No. 497 M.D. 2018
                        Respondents            :   Submitted: January 5, 2024


OPINION
PER CURIAM                                         FILED: February 16, 2024


            Petitioner, Aquil Johnson (Johnson), is an inmate at the State Correctional Institution – Rockview (SCI-Rockview). Johnson's amended petition for review asserts claims of negligence and deprivation of due process. Respondents, John Wetzel, Secretary of Corrections, of the Department of Corrections (DOC), Mark Garman, Superintendent of SCI-Rockview, and various unnamed "Officers, Agents, Servants, Employees and Attorneys"[1] (collectively, Respondents) have filed an application for relief in the form of a motion for summary relief (Summary Relief Motion). For the reasons discussed below, we grant the Summary Relief Motion.


## I. Background

            In March 2013, Johnson was sentenced in two criminal matters to an aggregate term of approximately 20 to 40 years of incarceration. *Johnson v. Wetzel*

---

[1] It is unclear whether Johnson is asserting that the unnamed Respondents are officers, agents, servants, employees, and attorneys of the DOC or of SCI-Rockview.

(*Johnson II*), 238 A.3d 1172, 1175-76 (Pa. 2020). The sentencing court also assessed costs and fees against Johnson. *Id.* at 1175. To satisfy these financial obligations, the DOC began deducting monies from Johnson's inmate account under Section 9728(b)(5) of the Sentencing Code,[2] 42 Pa.C.S. § 9728(b)(5). *Johnson II*, 238 A.3d at 1175. These withdrawals are known as Act 84 deductions because the provision authorizing them was added to Section 9728 of the Sentencing Code by the Act of June 18, 1998, P.L. 640, No. 84 (Act 84). *Johnson II*, 238 A.3d at 1175 (citing *Bundy v. Wetzel*, 184 A.3d 551, 554 (Pa. 2018)). The DOC began making withdrawals in June 2013, without notifying Johnson in advance. *Johnson II*, 238 A.3d at 1175. Fundamentally, Johnson claims he is entitled to a refund of monies deducted from his inmate account for payment of costs and fees related to his 2013 criminal convictions because no procedural safeguards were in place allowing him to challenge the assessments before the deductions began. *Id.*

In July 2013, Johnson learned of the deductions and questioned his prison counselor about them. The counselor relayed that the inmates' account office had stated the deductions were lawful under Act 84 and the financial responsibilities imposed on Johnson as part of his criminal sentences. *Johnson II*, 238 A.3d at 1176; Pet. for Rev., Ex. FC.[3]

In 2014, the United States Court of Appeals for the Third Circuit held that administrative pre-deprivation due process was required prior to the first Act 84 deduction from an inmate's account and that the requisite due process included DOC

---

[2] 42 Pa.C.S. §§ 9701-9799.75.

[3] Johnson did not reattach to his amended petition the exhibits from his original petition for review. However, we will disregard any defect in this regard, applying the pleading requirements liberally pursuant to Rule 105(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 105(a).

notice to the affected inmate of the DOC's policy concerning Act 84 deductions, the total amount of the inmate's fees and costs, the rate at which funds are to be deducted, and which funds will be subject to the deductions. *Montanez v. Sec'y, Pa. Dep't of Corr.*, 773 F.3d 472, 486 (3d Cir. 2014). The Third Circuit also opined that the DOC was required to provide a reasonable pre-deduction opportunity to object as a means of avoiding any potential errors in the deductions. *Id.* at 486.

In 2018, the Pennsylvania Supreme Court addressed the same due process issue and reached a similar conclusion. *See Bundy*, 184 A.3d at 558. Of significance here, the *Bundy* Court also noted that, in circumstances where procedural safeguards are not feasible in the pre-deprivation timeframe, the availability of a meaningful post-deprivation remedy satisfies due process requirements. *Id.* at 557; *see also Johnson II*, 238 A.3d at 1176 (citing and discussing *Bundy*).

Shortly after our Supreme Court decided *Bundy*, Johnson filed a grievance complaining that he never received pre-deprivation due process as required by *Bundy*; Johnson sought a refund of all monies the DOC had deducted since 2013, approximately $860. *Johnson II*, 238 A.3d at 1176-77. The DOC denied the grievance because Johnson had failed to provide documentation demonstrating that the assessment was in error. *Id.* at 1177. Nonetheless, the Department suspended deductions for 15 business days to allow Johnson to provide such documentation. *Id.*; Pet. for Rev., Ex. GR; *see also* Pet. for Rev., Ex. RS01 (SCI-Rockview business office response to Johnson directing him to provide documentation if he believed the 2013 cost assessment was in error). Johnson did not do so, however; instead, he lodged an administrative appeal, arguing that the suggested post-deprivation remedy was insufficient in light of *Bundy*. *Johnson II*,

3

238 A.3d at 1177. He also filed a second grievance asserting the same denial of due process. The Department denied the appeal and the second grievance. *Johnson II*, 238 A.3d at 1177; Pet. for Rev., Ex. GR2.

Johnson then filed his original petition for review in this Court, asserting a claim in replevin to recover the roughly $860 the DOC had deducted from his inmate account, together with interest, attorney fees,[4] and nominal damages. He also alleged a violation of his due process rights, asserting that he should have received an administrative ability-to-pay hearing based on alleged changes in his circumstances. Citing *Bundy*, Johnson asserted that the Act 84 deductions interfered with his ability to pursue various pending litigation related to his 2013 convictions. *See Bundy*, 184 A.3d at 559.

Johnson later obtained leave to file an amended petition for review, in which he asserted a negligence claim alleging that his prison counselor had negligently misinformed him in 2013 that the Act 84 deductions were lawful. He further averred that the DOC was negligent in administering his inmate account because it withdrew funds without pre-withdrawal due process. Johnson again demanded a refund of the monies the DOC had withdrawn from his account, together with interest, attorney fees, and nominal damages.

The DOC filed preliminary objections asserting that Act 84 authorized deductions based on the sentencing orders without providing an ability-to-pay hearing before the first deduction. The DOC also asserted that the two-year statute of limitations period pertaining to negligence[5] barred Johnson's claim, in that the first deduction was made in 2013, but Johnson did not file his petition for review

---

[4] Johnson is pursuing this action *pro se*.

[5] *See* Section 5524(6) of the Judicial Code, 42 Pa.C.S. § 5524(6).

4

until 2018. The DOC also posited that it had no constitutional obligation to implement procedural safeguards before the first Act 84 deduction was effectuated. Additionally, the DOC claimed qualified immunity from liability on the basis that government officials are immune from lawsuits based on allegedly unconstitutional actions so long as those officials did not violate individual rights which were clearly established at the time, and about which a reasonable government official would have known. Finally, the DOC asserted sovereign immunity on the basis that Johnson's action, although couched in terms of negligence, actually alleged only intentional conduct, to which sovereign immunity applies.

Johnson filed preliminary objections to the DOC's preliminary objections, asserting that the two-year time bar for negligence claims did not apply because the DOC was guilty of fraudulent concealment; qualified immunity was inapplicable, because due process requirements were already established in 2013; and the DOC's own policies require it to give him, prior to the first deduction, a memorandum informing him of the imminent deductions together with a copy of the official court documents relied on for those deductions.

This Court overruled Johnson's preliminary objections, sustained the DOC's preliminary objections, and dismissed the amended petition for review. *Johnson v. Dep't of Corr.* (*Johnson I*) (Pa. Cmwlth., No. 497 M.D. 2018, filed June 3, 2019). We concluded that the negligence claim in the amended petition replaced the replevin claim in the original petition. We also dismissed the purported negligence claim, agreeing with the DOC that Johnson alleged only intentional conduct. Regarding Johnson's claims under Act 84, this Court held that Johnson did not allege a relevant change of circumstances, as he had been granted *in forma pauperis* status and was actively litigating his post-conviction matters. As for the

5

due process claim, we rejected the DOC's qualified immunity argument but concluded that the due process claim accrued when the DOC made its first Act 84 deduction from Johnson's account in 2013, such that the two-year statute of limitations had expired by the time Johnson filed his petition for review in 2018. *See generally Morgalo v. Gorniak*, 134 A.3d 1139, 1147-48 (Pa. Cmwlth. 2016) (holding that a two-year limitations period applies to Act 84 deductions). We rejected Johnson's tolling argument based on fraudulent concealment because he did not exercise adequate diligence by inquiring into the state of the law.

Johnson filed a direct appeal in the Pennsylvania Supreme Court, raising a number of issues relating to his purported negligence cause of action and his due process claim, as well as his alleged entitlement to an administrative ability-to-pay hearing. *See Johnson II*, 238 A.3d at 1180. Our Supreme Court affirmed this Court's decision in large measure.

Regarding Johnson's negligence claim, our Supreme Court concluded that "the sum and substance of the [amended petition] as a whole . . . is that the [DOC] violated [Johnson's] procedural due process rights based on intentional conduct." *Johnson II*, 238 A.3d at 1181. The Court explained that "[s]imply labeling the claim as one sounding in negligence does not make it so where the harm is alleged to have been caused by the [DOC's] actions in deducting monies from [Johnson's] account . . . and then telling him after the fact that the deductions were authorized . . . ." *Id.* Because the claim alleged a deprivation of property through intentional conduct, sovereign immunity shielded the DOC from liability. *Id.* Our Supreme Court also agreed with this Court that the statute of limitations was not tolled by any alleged fraudulent concealment. *Id.* at 1181-82. In addition, our Supreme Court pointed to Johnson's averment that the DOC "knew that notice and

6

an opportunity to object was required before making the first deduction." *Id.* at 1182 (additional quotation marks omitted). In the Court's view, this averment clarified that Johnson's claim sounded solely in procedural due process, not negligence.

Addressing Johnson's argument that he was entitled to an administrative ability-to-pay hearing based on changed circumstances, our Supreme Court rejected Johnson's claim on two grounds. First, Johnson did not contend that the alleged change in circumstances occurred between sentencing and the first Act 84 deduction as required under prevailing law. *Johnson II*, 238 A.3d at 1184. Second, our Supreme Court agreed with this Court that Johnson did not aver that his post-sentencing litigation was hindered by his alleged change in circumstances; indeed, he was granted *in forma pauperis* status and was actively litigating those cases. *Id.*

Regarding Johnson's due process claim, our Supreme Court explained:

[P]risoners are entitled . . . to notice of certain items and a reasonable opportunity to object before the first Act 84 deduction is made. These items include the [DOC's] Act 84 deduction policy, the prisoner's total monetary obligation to the Commonwealth, the rate at which funds will be deducted from his account, and the funds which will be subject to withdrawals. *See Bundy*, . . . 184 A.3d at 558. This case differs from *Bundy* in that the first Act 84 deduction occurred before either *Montanez* or *Bundy* was decided. Until those decisions were announced, no reported judicial decision had held that every inmate in the [DOC's] custody from whose account Act 84 deductions would be made was entitled to such process.

[I]ndividuals in [Johnson's] position are placed in a difficult position as their first Act 84 deduction occurred before the holdings in *Bundy* and *Montanez* were announced. Plainly, such individuals could not have relied on those decisions as a basis to demand pre-deprivation procedural safeguards. These individuals, moreover, may

7

have had grounds such as those outlined in *Bundy* to challenge the validity of the [DOC's] deduction plan.

With the above in mind we note that, when pre-deprivation process is not feasible – meaning that the state is not in a position to provide it – "the availability of a meaningful post-deprivation remedy satisfies due process." *Bundy*, . . . 184 A.3d at 557 (citing *Zinermon v. Burch*, 494 U.S. 113, 128 . . . (1990)). We now hold that that aspect of *Bundy* applies to inmates whose accounts were subject to Act 84 deductions without the benefit of pre-deprivation safeguards. Thus, due process requires that the [DOC], in response to an administrative grievance which accurately recites that no *Bundy* process was afforded prior to the first Act 84 deduction, must give the grievant notice of the items required by *Bundy* and a reasonable opportunity to explain why the past and/or intended deductions should not take place notwithstanding the dictates of Act 84. Any meritorious challenge along these lines would then implicate the substantive remedy of restoring the prisoner's wrongly-deducted funds to his or her account.[]

*Johnson II*, 238 A.3d at 1182-83 (footnote omitted).

Applying that analysis to this case, our Supreme Court observed that, in response to Johnson's grievance in June 2018 concerning the lack of pre-deprivation process, SCI-Rockview suspended deductions for 15 business days to give Johnson an opportunity to challenge their legitimacy. Pet. for Rev., Ex. GR. Our Supreme Court reasoned that "this type of temporary suspension is consistent with the 'fundamental [due process] requirement' that the individual have an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Johnson II*, 238 A.3d at 1183 (first quoting *Commonwealth v. Maldonado*, 838 A.2d 710, 714 (Pa. 2003); and then quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The Court explained that, like the pre-deprivation requirements, any post-deprivation remedial process must include providing notice of the DOC's Act 84 deduction policy, the total financial obligation, the rate at which funds will be

8

deducted, and the identity of the funds subject to deductions. *Johnson II*, 238 A.3d at 1183.

Here, however, our Supreme Court concluded that "the record does not clarify whether all of the information contemplated by *Bundy* and *Montanez* was given to [Johnson] when the deductions were temporarily suspended." *Johnson II*, 238 A.3d at 1183. Accordingly, the Supreme Court remanded the matter to this Court "for further factual development on this topic and an appropriate procedural remedy if one is required." *Id.*

On remand, the DOC filed an answer with new matter to the amended petition, and Johnson filed an answer to the new matter. The parties filed cross-applications for relief in the nature of cross-motions for judgment on the pleadings, both of which this Court denied. The DOC then requested discovery, specifically leave to depose Johnson, which this Court granted. Following that deposition, the DOC filed the Summary Relief Motion. The parties have briefed the Summary Relief Motion, and it is now before this Court for disposition on the briefs.

## II. Issue

Based on our Supreme Court's analysis and holdings in *Johnson II*, the sole remaining issue for this Court on remand is whether the DOC's post-deprivation process allowing Johnson to challenge his inmate account deductions was sufficient to comply with the due process requirements established in *Bundy*. We conclude that it was.

## III. Discussion

This Court has explained the standard applicable to summary relief as follows:

9

Rule 1532(b) of the Rules of Appellate Procedure provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). A motion for summary relief is evaluated according to the same standards as a summary judgment motion. *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015); *Summit Sch., Inc. v. Commonwealth*, 108 A.3d 192, 193 n.1 (Pa. Cmwlth. 2015); *see also* Pa. R.A.P. 1532 Note (stating that Pa. R.A.P. 1532(b) "authorizes immediate disposition of a petition for review, similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding judgment on the pleadings and peremptory and summary judgment"). Summary relief may be granted only if there are no genuine disputes of material fact and, viewing the evidence in the light most favorable to the nonmoving party, the movant's right to judgment in its favor is clear as a matter of law. *Hosp*[.] *& Healthsystem Ass*[']*n of* [*Pa.*] *v. Commonwealth*, . . . 77 A.3d 587, 602 (Pa. 2013); *Leach v. Commonwealth*, 118 A.3d 1271, 1277 n.5 (Pa. Cmwlth. 2015) (*en banc*), *aff'd*, 141 A.3d 426 (Pa. 2016).

*Pa. Mfrs. Ass'n Ins. Co. v. Johnson Matthey, Inc.*, 160 A.3d 285, 289 (Pa. Cmwlth. 2017). Further, we apply the same standard for motions for summary relief filed pursuant to Rule 1532(b) as for motions for summary judgment under Rule 1035.2 of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 1035.2. *Summit Sch.*, 108 A.3d at 193 n.1 (citing *Pa. Med. Soc'y v. Dep't of Pub. Welfare*, 39 A.3d 267, 276 & 277 n.11 (Pa. 2012)). The Official Note to Rule 1035.2 indicates that where a motion for summary judgment is based on the nonmoving party's failure to produce evidence of facts essential to his cause of action, that party must produce evidence of such facts in order to defeat the motion. Pa.R.Civ.P. 1035.2, Official Note.

Here, our Supreme Court in *Johnson II* remanded this matter to us for disposition of the single issue of whether the DOC provided post-deduction due

10

process in compliance with the requirements announced in *Bundy*. As stated above, the requirements for post-deprivation remedial process must include informing Johnson of the DOC's Act 84 deduction policy, his total financial obligation, the rate at which funds will be deducted, and the identity of the funds subject to deductions. *Johnson II*, 238 A.3d at 1183. The DOC addressed each of these requirements in Johnson's deposition and related deposition exhibits.

Regarding the DOC's Act 84 deduction policy, the DOC produced a copy of its inmate orientation manual, 2009 edition, signed by Johnson, which included a statement of the deduction policy. Respondents' Br., Ex. K, Dep. Ex. 1 at 3 (deduction policy), Dep. Ex. 2 (signature page with Johnson's signature, acknowledging receipt of manual). However, the manual and Johnson's signature are dated 2010. Thus, both relate to a previous incarceration, not to Johnson's 2013 convictions. As such, they do not bear on whether Johnson was provided a copy of the deduction policy in connection with his 2013 convictions.

Nonetheless, we conclude that there is no genuine dispute that Johnson received post-deduction notice of the deduction policy. The policy provides, in pertinent part, that "[i]n accordance with 42 Pa. C.S. § 9728, the [DOC] will collect money from your account if the court orders you to pay restitution, reparation, fees, costs, fines and/or penalties associated with the criminal proceedings. The [DOC] shall also collect court costs and filing fees as ordered by the court." Respondents' Br., Ex. K, Dep. Ex. 1 at 3. Although the record does not clearly demonstrate that Johnson was provided with a copy of the policy *per se* in connection with his 2013 convictions and the related deductions, he does not dispute that he became aware of the deductions in July 2013 through his monthly inmate account statement. *Id.*, Ex. K at 16-17. Moreover, contrary to Johnson's assertion that the sentencing court did

11

not impose costs, the record demonstrates that it did. *See* Pet. for Rev., Exs. RS03 & RS04. The business office at SCI-Rockview also referred to the deduction policy in its notices to Johnson dated June 25, 2018, informing him that he could file a grievance if he disputed the validity of the cost assessments. *See id.*, Dep. Ex. 7. Notably, Johnson does not suggest that he was unaware of the deduction policy beginning in July 2013; instead, he simply insists that no post-deduction process can cure a lack of pre-deduction process, even though our Supreme Court expressly held to the contrary in *Johnson II*.[6] *See* 238 A.3d at 1182-83 (quoting *Bundy*, 184 A.3d at 557).

We do not read our Supreme Court's decision in *Johnson II* as imposing an inflexible requirement that the DOC must provide a written copy of its precise deduction policy language, as long as the inmate is demonstrably aware of the policy. Here, there is no doubt that Johnson was aware of the deduction policy beginning in 2013 and that, moreover, he was reminded of the policy in connection with the DOC's 2018 notification of his grievance rights relating to the amount of the assessments being deducted. Accordingly, we conclude that the DOC has satisfied the first requirement of post-deduction due process.

Regarding the total amount of Johnson's financial obligation subject to deductions, those totals were set forth in documents provided to Johnson in sentencing notifications and by the SCI-Rockview business office in relation to his grievance rights. *See* Respondents' Br., Ex. K, Dep. Exs. 4 & 7. Moreover, Johnson

---

[6] Recently, our Supreme Court, while emphasizing the importance of pre-deprivation due process, again acknowledged that "when pre-deprivation process is not feasible, or it undermines legitimate institutional concerns, or it involves a truly routine matter of accounting, then post-deprivation process may be substituted for pre-deprivation process." *Washington v. Pa. Dep't of Corr.*, 306 A.3d 263, 296 (Pa. 2023).

12

does not and cannot dispute having received notice of the totals, inasmuch as he attached copies of the sentencing orders setting forth those totals to his original petition for review. *See* Pet. for Rev., Exs. RS03 & RS04. Accordingly, the DOC has satisfied the second post-deduction due process requirement.

Regarding the rate at which deductions were to be made and the funds subject to deduction, the SCI-Rockview business office's notice regarding Johnson's grievance rights explained in detail:

> Under DC-ADM 005, provided that you have at least $10 in your inmate account, your inmate account will be subject to an initial deduction to pay the entire amount of your Crime Victim Compensation/Victim Services Fund fees, and an additional 20% of the remaining funds in your account may also be deducted. Thereafter, all incoming funds (except those specifically noted in DC-ADM 005)[7] will be subject to a deduction, provided that you have at least $10 in your inmate account. 50% of incoming funds will be deducted to pay any remaining balance for the Crime Victim Compensation/Victim Services Fund fees. When the Crime Victim Compensation/Victim Services Fund fees are paid in full, then the deductions will be reduced to 20% and applied to any additional debts associated with your sentence. These deductions will continue until you have paid off your outstanding financial obligations.

Respondents' Br., Ex. K, Dep. Ex. 7. Further, Johnson does not contend that he was unaware of the deduction calculations or of which funds in his inmate account would be subject to deduction. Accordingly, we conclude that the DOC has satisfied the third and fourth requirements for post-deduction due process.

---

[7] The record does not indicate whether Johnson received specific notice of any incoming funds that were excepted from the deduction requirement. However, Johnson does not challenge any of the deductions as having taken funds that were excepted.

13

In addition, although *Bundy* did not specifically address the grievance process, we reiterate that here, Johnson was specifically advised of his right to file a grievance to contest the validity of the deduction assessments. He filed a grievance in response to that notice. *See* Respondents' Br., Ex. K at 47-48. Critically, however, he has never challenged the calculation of the assessments. His sole argument has consistently related to the pre-deduction lack of due process and his related contention that no post-deduction process can correct that prior due process violation. As explained above, the *Bundy* Court expressly held to the contrary, *i.e.*, that post-deduction due process *does* remedy a previous lack of due process where, as here, no pre-deduction due process provisions were in place at the time the deductions commenced and the inmate's due process rights were not evident until *Bundy* was decided. *See Bundy*, 238 A.3d at 1182-83.

Finally, we reiterate our observation that the DOC suspended deductions from Johnson's inmate account for 15 business days to allow him to challenge the validity of the cost assessments. He filed both an appeal of his initial grievance and a new grievance, but in neither did he ever claim the amounts of the assessments were wrong. He also exhausted the grievance process for both grievances. Johnson does not allege any insufficiency in the post-deduction process other than the fact that it was not provided pre-deduction. The Pennsylvania Supreme Court rejected that basis for challenging the assessments in *Johnson II*.

For all of these reasons, we conclude that there is no genuine issue of material fact remaining for trial, that Johnson indisputably received sufficient post-deduction due process, and that the DOC is entitled to judgment in its favor as a matter of law.

## IV. Conclusion

Based on the foregoing discussion, we grant the Summary Relief Motion and dismiss the amended petition for review with prejudice.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aquil Johnson,                                    :
                           Petitioner             :
                                                  :
            v.                                    :
                                                  :
John Wetzel, Secretary PA. D.O.C.,                :
Mark Garman, Super., S.C.I.                       :
Rockview et al., Officers, Agents,                :
Servants, Employees and Attorneys,                :    No. 497 M.D. 2018
                          Respondents             :

PER CURIAM

# **O R D E R**

AND NOW, this 16th day of February, 2024, Respondents' application for relief in the form of a motion for summary relief is GRANTED. Petitioner's amended petition for review is DISMISSED WITH PREJUDICE.