# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aquil Johnson,                    :
              Petitioner       :
                             :
            v.                 :    No. 497 M.D. 2018
                             :    Submitted: July 23, 2021
John Wetzel, Secretary PA. D.O.C.,    :
Mark Garman, Super., S.C.I.         :
Rockview et al., Officers, Agents,     :
Servants, Employees and Attorneys,    :
              Respondents    :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER            FILED: December 23, 2021

Following remand, before the Court are cross-motions for judgment on the pleadings, which we treat as applications for summary relief under Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1532(b). Aquil Johnson (Johnson) commenced this matter in our original jurisdiction by filing a pro se petition for review, which Johnson subsequently amended, asserting John Wetzel, Secretary PA. D.O.C., Mark Garman, Super., S.C.I. Rockview, et al., Officers, Agents, Servants, Employees and Attorneys (collectively, Respondents) are wrongfully deducting monies from his inmate account to satisfy financial obligations associated with two criminal convictions. Johnson contends judgment should be

entered in his favor because Respondents failed to respond to his "New Matter," wherein Johnson asserted that Section 9721(c.1) of the Sentencing Code, 42 Pa.C.S. § 9721(c.1), cannot be applied to him because the offenses for which he was convicted occurred before the section's effective date. As Respondents filed no reply, resulting in the allegations being deemed admitted, and since there is no signed sentencing order, Johnson claimed he is entitled to judgment in his favor. Respondents maintain the deductions, commonly referred to as Act 84 deductions, are proper under Section 9728(b)(5), 42 Pa.C.S. § 9728(b)(5), and Section 9721(c.1) of the Sentencing Code. To the extent Johnson was denied pre-deprivation process, Respondents submit that any due process violation was cured by providing Johnson with post-deprivation process pursuant to the Supreme Court's directive in *Bundy v. Wetzel*, 184 A.3d 551 (Pa. 2018). Upon review of the pleadings, we deny both cross-motions.

## I.    BACKGROUND

Johnson initiated this action by filing a Petition for Review (Initial Petition) on or about July 19, 2018, and thereafter filed an Amended Petition for Review (Amended Petition), with leave of Court, on or about August 20, 2018.[1] Therein, Johnson alleged as follows. On March 15, 2013, the Court of Common Pleas of Philadelphia County (Sentencing Court) sentenced Johnson for two unrelated criminal matters at dockets CP-51-CR-0004249-2007 and CP-51-CR-0001587-2009. (Amended Petition (Am. Pet.) ¶ 13.) According to Johnson:

> the [S]entencing [C]ourt never informed [Johnson] of the total amount of cost[s] owed or that the [Department of Corrections (Department)]

---

[1] The Amended Petition was filed after Respondents filed preliminary objections to the Initial Petition.

2

was going to deduct funds from [his] Inmate Account[; Johnson] was never provided with the [Department]'s Policy regarding collection of cost[s] and fines nor was [Johnson] given an ability to pay hearing or an opportunity to contest and object.

(*Id.* ¶ 14.)

In June 2013, the Department allegedly "made the first deduction from [Johnson]'s inmate account with[]out any notice whatsoever or any opportunity for [Johnson] to contest and object." (*Id.* ¶ 15.) The following month, when Johnson learned of the deduction, Johnson contacted an inmate counselor who allegedly told Johnson "that the deductions were lawful and that the only way to stop them is to pay the full amount of money owed." (*Id.* ¶ 16.)

Approximately five years later, Johnson filed a grievance (First Grievance) after receiving a copy of the Supreme Court's decision in *Bundy*. In *Bundy*, the Supreme Court held that, in order to satisfy due process, the Department must advise an inmate, prior to the first deduction, "of the total amount of [the inmate's] financial liability as reflected in [the] sentencing order, as well as the Department's policy concerning the rate at which funds will be deducted . . . and which funds are subjection to deduction." 184 A.3d at 558. In addition, the Supreme Court required the Department to provide "the inmate a reasonable opportunity to object to the application of the Department's policy to [the inmate's] account." *Id.* at 559. Johnson avers the First Grievance was granted in part and denied in part. (Am. Pet. ¶ 18.) Specifically, he claims "[i]t was granted in regard[] to not receiving notice of deductions or an opportunity to contest," and "[i]t was denied in regard[] to receiving a refund or damages from the failure to provide notice and an opportunity to contest and object." (*Id.*) Johnson appended a copy of the response to the First Grievance to his Initial Petition, which he incorporated into the Amended Petition as Exhibit

3

GR. The response stated, in pertinent part: "In this grievance[,] you state that you were not given notice of deductions, nor were you given a hearing to determine your ability to pay [f]ines, [c]ourt [c]osts, restitution, and [Crime Victims Compensation Fund fees]. Attached is the Notice . . . ." (Initial Petition (Initial Pet.), Exhibit (Ex.) GR.) The response further stated: "Uphold in part in regard to not receiving the assessment notice. The document is attached to this response."[2] (*Id.*) Finally, the response advised Johnson that deductions would be suspended for 15 working days to allow Johnson time to submit official court documentation showing the assessments were invalid. (*Id.*)

Johnson averred that he appealed the denial of the First Grievance and filed another grievance (Second Grievance), which was also denied. (Am. Pet. ¶ 18.) The response to the Second Grievance was also appended as an exhibit to Johnson's Initial Petition, as Exhibit GR2. The response stated: "Included in the grievance response to [the First Grievance] you were provided with the Assessment Notice." (Initial Pet., Ex. GR2.) The Second Grievance denial was also appealed. (Initial Pet., Ex. GRA2.) In his appeal, Johnson stated "Post[-]deprivation notice does not excuse or cure a failure to give pre[-]deprivation notice." (*Id.*) Johnson's appeals were also denied.

Johnson asserted his procedural due process rights were violated as he was not provided pre-deprivation notice or an opportunity to object prior to the first deduction being made. (Initial Pet. ¶ 23.) Johnson further asserted that he was entitled to an ability-to-pay hearing because there was a change in circumstances, namely a change in Department policy and his financial status, which hindered his ability to access the courts and challenge his convictions. (*Id.* ¶¶ 27-45.) Johnson

---

[2] Johnson did not attach the documents that were allegedly attached to the response with his Exhibit.

4

also contended that the Sentencing Court did not sign the sentencing orders in which the costs were allegedly imposed, only a court clerk did, and, therefore, Respondents were not authorized to make the deductions in the absence of such an order. (*Id.* ¶¶ 46-50.) Finally, Johnson alleged in the Amended Petition that Respondents negligently handled his personal property. Johnson requested damages in the amount of $859.80, which represented the amount deducted from his inmate account as of the date of the Amended Petition, interest, and nominal damages.[3] (Am. Pet. ¶ 27.)

Respondents filed Preliminary Objections in the nature of a demurrer, which this Court granted. *See Johnson v. Wetzel* (Pa. Cmwlth., No. 497 M.D. 2018, filed June 3, 2019) (*Johnson I*), affirmed in part and reversed in part, 238 A.3d 1172 (Pa. 2020) (*Johnson II*). There, we held Johnson's "negligence" claim was based on intentional conduct and, therefore, barred by sovereign immunity. *Johnson I*, slip op. at 11-12. As for Johnson's claim that there was a lack of a signed sentencing order, we held that Sections 9728(b)(5) and 9721(c.1), which authorize the Department to deduct certain costs even in the absence of a court order, applied because they were in effect at the time of sentencing in 2013 and placed Johnson "on notice of the Department's statutory authority to deduct funds from his account." *Id.*, slip op. at 14 (internal quotations omitted). We further held that the Department was not required to hold an ability-to-pay hearing based on changed circumstances as Johnson did not allege the threat of additional confinement or increased conditions of supervision for failing to pay the costs. *Id.*, slip op. at 15-16. In addition, we found Johnson was not denied due process since the Sentencing Code automatically imposes liability for costs, not fines. *Id.*, slip op. at 16. In relation to whether the

---

[3] Although proceeding pro se, Johnson also requested "[a]attorney fees if or when they become applicable." (Am. Pet. ¶ 27.)

Department was required to provide Johnson with notice prior to beginning deductions, we determined there was a factual issue as to whether Respondents were entitled to qualified immunity. *Id.*, slip op. at 20-21. Nonetheless, the Court granted Respondents' preliminary objection to those claims based on the running of the applicable statute of limitations, which we found was not tolled by the doctrine of fraudulent concealment. *Id.*, slip op. at 22-25. Accordingly, the Court dismissed the Amended Petition in its entirety. Johnson then appealed this decision to the Supreme Court.

On appeal, the Supreme Court affirmed in part and vacated this Court's order in part. *See Johnson II*. The Supreme Court held that the purported negligence claim was, in substance, a procedural due process claim. *Id.* at 1180-81. It further held, as discussed more fully below, that inmates who are denied pre-deprivation process before Act 84 deductions commence must be afforded certain post-deprivation process. *Id.* at 1182. Because it was unclear from the record whether all the required post-deprivation process was provided in response to the First Grievance, the Supreme Court remanded the matter for development of the factual record. *Id.* at 1183. The Supreme Court otherwise affirmed this Court's order as it related to the negligence and administrative ability-to-pay hearing claims. *Id.* at 1185.

Following remand, Respondents filed an Answer and New Matter, admitting to the deductions, which were made, they contend, pursuant to the Sentencing Court's directive. In their New Matter, Respondents averred that "[i]t [wa]s unclear whether [Johnson] received notice of Act 84 deductions before his first deduction," but Johnson "received post-deprivation due process." (Respondents' New Matter ¶ 9.)[4] Specifically, Respondents allege that, in response to the First Grievance, an

---

[4] Respondents' New Matter is misnumbered and contains two paragraphs numbered 9 and two paragraphs numbered 10. These averments are contained in both paragraphs numbered 9.

6

accountant for the Department (Accountant) provided Johnson with a copy of a notice for Act 84 deductions, one for each of Johnson's criminal cases. (*Id.* ¶¶ 14-15.) According to Respondents, "the [n]otice provided the amount owed in costs for each case as well as the documentation that was relied upon to make the assessment," referenced Act 84 and DC-ADM 005, which is the Department's policy related to "Collection of Inmate Debts," described the Department's policy, and provided approximately 10 examples of challenges to the deductions. (*Id.* ¶¶ 16-18.) In addition, Respondents averred that the response suspended deductions for 15 working days to afford Johnson an opportunity to grieve the deductions' legitimacy. (*Id.* ¶ 19.) To their Answer and New Matter, Respondents attached a copy of Johnson's First Grievance, the response upholding and denying it in part, along with a copy of the purported notice for each case that was referred to therein. (*Id.*, Ex. C.)

In his reply to the New Matter, Johnson denied Respondents' allegations as to post-deprivation notice, stating he "never received any notice from [Accountant] or anyone else. The only thing ever provided to [Johnson] was the grievance response. No notice was attached nor subsequently provided." (Johnson's Answer to New Matter ¶ 16.)[5]

On the same day he filed his reply to Respondents' New Matter, Johnson filed a standalone document titled "Petitioner's New Matter." Therein, Johnson alleged, for the first time, that this Court erred in applying Section 9721(c.1) of the Sentencing Code, which authorizes the deductions of costs even in the absence of a court order, to him because he committed his offenses in 2007 and 2008, which was before the section's effective date in December 2010. (Johnson's New Matter ¶¶ 11-

---

[5] Johnson's reply to the New Matter is numbered in sequence, without regard to the Respondents' misnumbering of the averments in the New Matter. Therefore, this reply corresponds with paragraph 14 of Respondents' New Matter.

12.) Johnson claimed the date of the offense, not the date of sentencing, should control. (*Id.* ¶¶ 5-9.) To hold otherwise, Johnson asserted, would violate the *ex post facto* clauses.[6] (*Id.* ¶ 12.) Johnson averred that this Court previously found that Section 9721(c.1) was penal in nature and, therefore, could not be applied retroactively without violating the prohibition against *ex post facto* laws. (*Id.* ¶ 13 (citing *Rega v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 244 M.D. 2017, filed Jan. 31, 2018)).)[7] Because Section 9721(c.1) took effect after Johnson committed his crimes, Johnson averred a signed order of the Sentencing Court was required before Respondents could lawfully deduct funds from his inmate account. (*Id.* ¶ 14.) Johnson then reiterated his claim that the sentencing orders here were not signed by the Sentencing Court but were instead signed by a court clerk. (*Id.* ¶ 19.) As a result, Johnson asked this Court to "re-examine" its holding from *Johnson I*, wherein the Court stated that "Sections 9728(b)(5) and 9721(c.1) of the Sentencing Code were in effect at the time Johnson was sentenced," thus distinguishing this matter from *Rega*, "and reverse as a matter of law." (Johnson's New Matter ¶ 21 (citing *Johnson I*, slip op. at 14 & n.11).)

Although Johnson's "New Matter" contained a notice to plead, Respondents filed no reply.[8] Rather, on April 9, 2021, Respondents filed their Motion for Judgment on the Pleadings. Therein, Respondents contend the sole issue before the

---

[6] Article I, section 17 of the Pennsylvania Constitution provides, "No *ex post facto* law . . . shall be passed." Pa. Const. art. I, § 17. The United States Constitution has two provisions that prohibit *ex post facto* laws, one, contained in Article I, Section 9, Clause 3 of the United States Constitution, U.S. Const. art. I, § 9, cl. 3, which applies to Congress, and the other, contained in Article I, Section 10, Clause 1 of the United States Constitution, U.S. Const. art. I, § 10, cl. 1, which applies to the states.

[7] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[8] As discussed more fully below, Johnson's New Matter was procedurally improper.

Court following remand from the Supreme Court is "whether [Johnson] received post-deprivation due process in accord with *Bundy*," which they contend he has. (Respondents' Motion ¶ 4.) Respondents assert Johnson received adequate post-deprivation due process when Accountant responded to the First Grievance by enclosing a copy of the notices for each case, which satisfied all the requirements of *Johnson II* and *Bundy*. Respondents further assert that Johnson "admitted he was receiving post-deprivation notice, but he failed to acknowledge it in his response to Respondents' New Matter." (*Id.* ¶ 36.) In particular, Respondents cite Johnson's statement in a grievance appeal involving the Second Grievance in which Johnson states, "[p]ost[-]deprivation notice does not excuse or cure a failure to give pre[-]deprivation notice." (*Id.* ¶ 37 (quoting Initial Pet., Ex. GRA2) (internal quotations omitted).) In their supporting brief, Respondents acknowledge that Johnson "now denies ever receiving notice and contests that he was provided with post-deprivation due process" but contend that "the pleadings before this Court, to include the exhibits, establish that he received notice [and], in fact, he admits to receiving notice, but asserts that because it did not occur before the first deduction that it violated *Bundy*." (Respondents' Brief (Br.) at 13.) Respondents also assert that Johnson "does not mention in his grievance documents that he did not receive the notices that are repeatedly mentioned by the staff member that is responding to his grievances." (*Id.*) Because the deductions were proper and any due process violation was cured by the post-deprivation process provided, Respondents ask the Court to enter judgment in its favor.

On April 15, 2021, Johnson filed his Cross-Motion for Judgment on the Pleadings. Therein, Johnson asserts Respondents failed to respond to Johnson's New Matter, and, therefore, the factual averments contained therein are deemed

9

admitted. He asks that the Court enter judgment in his favor as a matter of law or, in the alternative, that this matter be submitted for a jury trial to determine the material facts that remain in dispute. In his brief, Johnson reasserts that this Court erred in applying Section 9721(c.1) to him in violation of the prohibition against *ex post facto* laws because the date of the offense, not the date of sentencing, controls, and here the offenses for which Johnson was convicted occurred prior to the enactment of Section 9721(c.1). He also argues that Respondents' motion should be denied because there are material facts that remain in dispute, namely, whether post-deprivation process was provided. Johnson argues Respondents make a "[b]ald assertion without any proof" and did not provide any evidence to support its claim that the notice was actually delivered. (Johnson's Br. at 14.)

In opposition to Johnson's cross-motion, Respondents assert that Johnson's purported New Matter was inappropriate because Respondents did not assert a counterclaim that would have permitted such a pleading. (Respondents' Br. at 5 n.2.) Respondents further contend that the "New Matter" is "entirely based on legal argument," and only factual averments are deemed admitted by a failure to respond. (*Id.*)

## II. DISCUSSION

### A. *General Legal Principles*

Rule 1532(b) provides that, "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). Rule 1532(b) encompasses motions for summary judgment, as well as motions for judgment on the pleadings, as we have here. *Id.*, Note. Such motions are considered

10

under the general standards governing those motions. *POM of Pa., LLC v. Dep't of Revenue*, 221 A.3d 717, 722 n.7 (Pa. Cmwlth. 2019). "When ruling on a motion for judgment on the pleadings in our original jurisdiction, we must view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted may be considered against the opposing party." *Bolus v. Fisher*, 785 A.2d 174, 176 n.4 (Pa. Cmwlth. 2001); *see also Trib Total Media, Inc. v. Highlands Sch. Dist.*, 3 A.3d 695, 698 n.2 (Pa. Cmwlth. 2010). In reviewing a motion for judgment on the pleadings, "[w]e may consider only the pleadings themselves and any documents properly attached thereto." *Bolus*, 785 A.2d at 176 n.4. Further, motions for judgment on the pleadings may be granted "only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law." *Id.* The moving party bears the burden of establishing the lack of a genuine issue of material fact. *Hughes v. Council 13, Am. Fed. of State, Cnty. & Mun. Emps., AFL-CIO*, 629 A.2d 194, 195 (Pa. Cmwlth. 1993). The Court "need not accept as true conclusions of law, unwarranted inferences from fact, argumentative allegations, or expressions of opinion." *Diess v. Pa. Dep't of Transp.*, 935 A.2d 895, 903 (Pa. Cmwlth. 2007) (quotation omitted).

With these principles in mind, we turn to the parties' motions.

### B. *Johnson's Motion*

Section 9728(b)(5)(i) of the Sentencing Code provides:

> The Department . . . shall make monetary deductions of at least 25% of deposits made to inmate wages and personal accounts for the purpose of collecting restitution, costs imposed under section 9721(c.1), filing fees to be collected under section 6602(c)[, 42 Pa.C.S. § 6602(c),] (relating to prisoner filing fees) and any other court-ordered obligation.

42 Pa.C.S. § 9728(b)(5)(i). Section 9721(c.1) further provides:

11

**Mandatory payment of costs.**--Notwithstanding the provisions of section 9728 . . . or any provision of law to the contrary, in addition to the alternatives set forth in subsection (a), the court shall order the defendant to pay costs. **In the event the court fails to issue an order for costs pursuant to section 9728, costs shall be imposed upon the defendant under this section**. No court order shall be necessary for the defendant to incur liability for costs under this section. The provisions of this subsection do not alter the court's discretion under Pa.R.Crim.P. [] 706(C) (relating to fines or costs).

42 Pa.C.S. § 9721(c.1) (emphasis added).

This provision was added to Section 9721 by Section 2 of the Act of October 27, 2010, P.L. 949, and was to take effect in 60 days, or on December 27, 2010. Johnson contends that, because he committed the offenses for which he was convicted before Section 9721(c.1) took effect, its application to him violates the prohibition against *ex post facto* laws. He further asserts that because Respondents did not reply to the "New Matter" in which he raised this issue, the allegations are deemed admitted and he is entitled to judgment in his favor as a matter of law. Respondents reply that the "New Matter" was improper as they did not assert any counterclaims or cross-claims. We agree.

Rule 1017(a) of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 1017(a), governs which pleadings are allowed. It provides that, except for actions involving asbestos litigation,

the pleadings in an action are limited to

(1) a complaint and an answer thereto,

(2) a reply if the answer contains new matter, a counterclaim or a cross-claim,

(3) a counter-reply if the reply to a counterclaim or cross-claim contains new matter, [and]

(4) a preliminary objection and a response thereto.

*Id.*

New matter is governed by Rule 1030 of the Pennsylvania Rules of Civil Procedure, which provides:

(a) Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading "New Matter." A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

(b) The affirmative defenses of assumption of the risk, comparative negligence and contributory negligence need not be pleaded.

Pa.R.Civ.P. 1030.

Respondents filed an Answer, along with New Matter, in which they asserted their affirmative defenses. Under Rule 1017(a)(2), it was appropriate for Johnson to file a reply to the New Matter, which he did. However, Johnson also separately filed his own "New Matter," although no counterclaim or cross-claim had been asserted against him, to which he would have needed to raise any affirmative defenses. Thus, Johnson's "New Matter" was procedurally improper.

However, the averments contained within Johnson's "New Matter" appear to respond to assertions made in Respondents' New Matter, which would have been proper for Johnson to include in his Reply to Respondents' New Matter. For instance, Respondents cite Section 9721(c.1) for support of their averment that, at the time of sentencing, "court costs were implied, and the Clerk of Court was

13

authorized to calculate those costs." (Respondents' New Matter ¶ 3.) In response to this averment, Johnson replied "DENIED. 42 Pa.C.S. § 9721(c.1[]) was inapplicable to [Johnson] where [Johnson's] alleged crimes were committed before the effective date of that statute." (Johnson's Answer to Respondents' New Matter ¶ 3.) Johnson's averments in his "New Matter," which was filed the same day, simply elaborated on why Johnson believed Section 9721(c.1) did not apply to him. Under these circumstances, we will consider the allegations contained within Johnson's "New Matter" but will not penalize Respondents for not responding to the allegations therein since there was no obligation to do so under the Rules of Civil Procedure. Thus, we will not consider those allegations deemed admitted for failing to file a reply but, instead, as deemed denied pursuant to Pennsylvania Rule of Civil Procedure 1029, Pa.R.Civ.P. 1029.[9] Moreover, we note that Rule 1029(a) only requires that "each averment of **fact**" be admitted or denied, Pa.R.Civ.P. 1029(a) (emphasis added), and Johnson's "New Matter" largely contains legal argument or conclusions, to which no response is required. In short, Johnson is not entitled to judgment in his favor on this claim solely because Respondents did not respond to the "New Matter."

---

[9] Rule 1029(b), (d), provides, in relevant part:

. . . .

(b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. . . .
. . . .
(d) Averments in a pleading to which no responsive pleading is required shall be deemed to be denied.

Pa.R.Civ.P. 1029(b), (d).

14

Turning to the merits of Johnson's argument that application of Section 9721(c.1) to Johnson would violate the prohibition against *ex post facto* laws, we also disagree. As we stated in *Johnson I*, "Sections 9728(b)(5) and 9721(c.1) of the Sentencing Code were in effect at the time Johnson was **sentenced**." *Johnson I*, slip op. at 14. Although he did not appear to raise our alleged error in his appeal to the Supreme Court, upon remand, Johnson now attempts to argue that the **date of the underlying offense** is what controls. Besides being potentially waived, the argument is also without merit.

It is true, as Johnson points out, that the date of the offense is used for purposes of determining whether a statute violates the *ex post facto* clause in some circumstances. For instance, Johnson cites *Commonwealth v. Wood*, 208 A.3d 131, 138 (Pa. Super. 2019),[10] in which the Superior Court held that the application of the Sexual Offender Registration and Notification Act (SORNA)[11] to individuals who committed their offenses before its effective date would have the effect of increasing their punishment in violation of the prohibition against *ex post facto* laws. However, for purposes of imposing costs, we have looked to the date of the sentencing instead. In *Commonwealth v. Morales-Rivera*, 67 A.3d 1290, 1293 (Pa. Cmwlth. 2013), this Court rejected the petitioner's argument that application of an amended version of Section 9728(g) of the Sentencing Code, which now allows for the recovery of transportation costs, violated the prohibition against *ex post facto* laws because the earlier version did not. We held that "[b]ecause the amended version of Section 9728(g) was in effect **at the time of [] sentencing**, it applied to [the petitioner.]" *Id.*

---

[10] Generally, Superior Court decisions are not binding on this Court but may be cited for their persuasive value. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[11] 42 Pa.C.S. §§ 9799.10-9799.42.

(emphasis added). Similarly, in *Buck v. Beard*, we held that Act 84 deductions from the inmate's account did not violate the *ex post facto* clause "because Act 84 was enacted on June 18, 1998, . . . and the trial court did not **sentence** [the inmate] until February 16, 2001." 834 A.2d 696, 701-02 (Pa. Cmwlth. 2003) (emphasis added). Therefore, amendments to statutes that occur prior to sentencing do not always violate the prohibition against ex post facto laws.

Johnson's reliance on this Court's prior decision in *Rega* likewise does not entitle him to judgment in his favor. In fact, *Rega* supports this Court's conclusion that it is the date of sentencing that matters for purposes of determining whether a statute imposing costs violates the *ex post facto* prohibition. In *Rega*, in support of preliminary objections in the nature of a demurrer, the respondents attempted to rely on Section 9721(c.1) to support their claim that a court order was not needed to collect costs and fees. We rejected that argument, stating:

> The problem with [the r]espondents' reliance on Section 9721(c.1) is that it was not enacted until 2010, long **after Rega was sentenced**.[] As a result, [the r]espondents cannot rely on Section 9721(c.1) to excuse the absence of a court order because such application would constitute an ex post facto law.

*Rega*, slip op. at 7-8 (emphasis added) (footnote omitted).

Here, Johnson was sentenced in 2013, which was after Section 9721(c.1) took effect. Therefore, we cannot agree with Johnson that its application to him would violate the *ex post facto* prohibition. Because it is not clear, as a matter of law, that judgment should be entered in Johnson's favor, we must deny Johnson's Motion.

### C.  *Respondents' Motion*

In *Bundy*, an inmate challenged Act 84 deductions on the basis that he was denied due process, namely pre-deprivation notice and a hearing before deductions

started. The Pennsylvania Supreme Court noted that it had never previously examined due process principles in relation to the deduction of funds from inmate accounts, but the United States Court of Appeals for the Third Circuit had in *Montanez v. Secretary Pennsylvania Department of Corrections*, 773 F.3d 472 (3d Cir. 2014). The Pennsylvania Supreme Court

> agree[d] with the Third Circuit's holding that, to comply with due process, the Department must, prior to the first deduction: (a) inform the inmate of the total amount of his financial liability as reflected in his sentencing order, as well as the Department's policy concerning the rate at which funds will be deducted from his account and which funds are subject to deduction; and (b) give the inmate a reasonable opportunity to object to the application of the Department's policy to his account. . . . These measures will help protect against errors in the Department's application of its Act 84 deduction policy without significantly impeding its ability to carry out essential functions.

*Bundy*, 184 A.3d at 558 (internal citations omitted).

In *Johnson II*, the Pennsylvania Supreme Court addressed the applicability of its holding in *Bundy* to individuals whose first Act 84 deductions occurred before *Bundy* or the Third Circuit's decision in *Montanez* was decided. It held that "when pre-deprivation process is not feasible," such as in this situation, "'the availability of a meaningful post-deprivation remedy satisfies due process.'" *Johnson II*, 238 A.3d at 1182 (quoting *Bundy*, 184 A.3d at 557). Accordingly, the Supreme Court held that

> due process requires that the Department, in response to an administrative grievance which accurately recites that no *Bundy* process was afforded prior to the first Act 84 deduction, must give the grievant notice of the items required by *Bundy* and a reasonable opportunity to explain why the past and/or intended deductions should not take place notwithstanding the dictates of Act 84.

*Id.* at 1183. Because the record was not clear at that procedural stage (preliminary objections) to determine whether the post-deprivation requirements were satisfied, the Supreme Court remanded the matter for further factual development. *Id.*

Following the close of the pleadings, Respondents assert they are entitled to judgment in their favor as a matter of law because Johnson was provided with post-deprivation process as the law requires. Specifically, they claim that in response to the First Grievance, Johnson was provided two notices, one for each of his criminal cases. The notices: (1) informed Johnson of the amounts owed; (2) notified Johnson that the Department would "begin making deductions from [Johnson's] inmate account to satisfy the financial obligations in accordance with . . . Act 84 and" the Department's policy, DC-ADM 005, which governs "Collection of Inmate Debts"; (3) identified which funds would be subject to deduction and detailed how such deductions would be made; (4) advised Johnson that he could file a grievance to challenge the accuracy of the deductions; and (5) provided 10 examples of bases to challenge the deductions. (Answer and New Matter, Ex. C.)

Respondents recognize that Johnson now denies receiving these notices but assert, nonetheless, that he previously acknowledged their receipt when he stated, in a grievance appeal involving the Second Grievance, that "[p]ost[-]deprivation notice does not excuse or cure a failure to give pre[-]deprivation notice." (Respondents' Motion ¶ 37 (quoting Initial Pet., Ex. GRA2).) Unfortunately for Respondents, the Court cannot infer receipt from such a statement. As explained above, "[w]hen ruling on a motion for judgment on the pleadings in our original jurisdiction, we must view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted may be considered against the opposing party." *Bolus*, 785 A.2d at 176 n.4. The Court need not accept unwarranted

18

inferences from fact as true. *Diess*, 935 A.2d at 903. That is what Respondents are asking this Court to do. Johnson explicitly denied receiving the notices purportedly provided, stating he "never received any notice from [Accountant] or anyone else. The only thing ever provided to [Johnson] was the grievance response. No notice was attached nor subsequently provided." (Johnson's Answer to New Matter ¶ 16.) A statement that "[p]ost[-]deprivation notice does not excuse or cure a failure to give pre[-]deprivation notice," does not equate to an admission of receiving the alleged post-deprivation notice. (Initial Pet., Ex. GRA2.) Accordingly, we agree with Johnson that a genuine issue of material fact remains, which precludes entry of judgment as a matter of law in Respondents' favor. Thus, Respondents' Motion is also denied.

## III. CONCLUSION

Based upon the foregoing, because neither party has shown that they are entitled to judgment as a matter of law in their favor, the cross-motions are denied.

_____
**RENÉE COHN JUBELIRER,** Judge

19

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aquil Johnson,                                    :
                   Petitioner        :
                                          :
           v.                                         :     No. 497 M.D. 2018
                                          :
John Wetzel, Secretary PA. D.O.C.,                :
Mark Garman, Super., S.C.I.                       :
Rockview et al., Officers, Agents,                :
Servants, Employees and Attorneys,                :
                   Respondents       :

## O R D E R

NOW, December 23, 2021, the parties' cross-motions for judgment on the pleadings are **DENIED.**

_____
**RENÉE COHN JUBELIRER,** Judge